**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Leland M. CARRIGER,
Defendant-Appellant.**

No. 78–5272.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 15, 1978.

Decided Feb. 5, 1979.

Rehearing Denied April 2, 1979.

Joseph S. Friedberg, Minneapolis, Minn., for defendant-appellant.

James K. Robinson, U. S. Atty., F. William Soisson, Detroit, Mich., for plaintiff-appellee.

Before LIVELY and MERRITT, Circuit Judges, and TAYLOR,* District Judge.

LIVELY, Circuit Judge.

The defendant was convicted by a jury of evading income taxes for the year 1971. 26 U.S.C. § 7201 (1976). The jury acquitted him of the same charge for 1972. The government sought to prove by the net

worth method [1] that Carriger substantially understated his taxable income on the returns which he filed for each of the taxable years for which he was indicted. Prosecution witnesses testified that the defendant owed approximately $13,000 more federal income tax for 1971 than he paid.

The net worth method of proof requires the government to establish a taxpayer's "opening net worth" with reasonable certainty. *Holland v. United States, supra* note 1, 348 U.S. at 132, 75 S.Ct. 127. This consists of the taxpayer's assets, at cost, less his liabilities on the last day of the year preceding the one for which taxable income is being reconstructed. The next step involves an analysis of expenditures of the taxpayer during the taxable year and a determination of his net worth at the end of that year. If the net worth at the end of the year plus non-tax-deductible expenditures during the year exceeds the amount of taxable income reported, there is an inference that additional taxable income was received. The government must investigate all leads furnished by a taxpayer to explain expenditures or increases in net worth in order to negate the existence of non-taxable sources. See, generally, *Holland v. United States, supra; United States v. Giacalone*, 574 F.2d 328 (6th Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978).

On appeal Carriger contends that the district court erred in denying his motion for an acquittal on the ground that opening (December 31, 1970) net worth was not established with reasonable certainty. Since all calculations in a net worth case use the opening net worth as their starting point, it is obvious that this figure must be accurate. The Supreme Court in *Holland* stated the requirement as follows:

> We agree with petitioners that an essential condition in cases of this type is the establishment, with reasonable cer-

---

* The Honorable Robert L. Taylor, Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

1. The net worth method was described in detail by the Supreme Court, and its use in tax evasion prosecutions approved in *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

tainty, of an opening net worth, to serve as a starting point from which to calculate future increases in the taxpayer's assets. The importance of accuracy in this figure is immediately apparent, as the correctness of the result depends entirely upon the inclusion in this sum of all assets on hand at the outset.

348 U.S. at 132, 75 S.Ct. at 134.

Our careful review of the evidence convinces us that the district court did not err in denying the motion for acquittal. Starting with a financial statement which the defendant prepared in 1966 the government witnesses analyzed Carriger's income and expenditures through 1970 and concluded that he could not have accumulated large amounts of cash or other assets which were unknown to them. Among items considered were evidence that Carriger had cashed some savings bonds and made no new investments and that he continued to pay interest on relatively small debts through 1971. The summary witness for the government, an experienced agent of the Internal Revenue Service who was an accountant, assumed that the defendant had "walking around money" of $500 on December 31, 1970 and on the same date in 1971. The evidence relied upon to establish opening net worth in this case is similar in kind to that relied upon in *Giacalone, supra.* The analysis of expenditures is similar in the two cases also. The opening net worth was established with sufficient certainty to present an issue for determination by the jury.

■ The second ground urged for reversal is that the district court erred in excluding evidence by which the defendant sought to attack the accuracy of the prosecution's opening net worth calculation and analysis of 1971 income. In his opening statement counsel for Carriger stated that the defense would show that the defendant's brother paid large amounts of money to the defendant in 1971 and that two promissory notes dated in 1970 were evidence that his brother owed the defendant $24,000.

The defendant's daughter testified that she saw her father count out a large sum of money and hand it to her uncle in 1969 or 1970. An apparently disinterested witness testified that in the spring or summer of 1971 he saw the defendant's brother push a pile of money toward the defendant. Describing the transaction the witness said, " . . . he hollered out ten thousand, and 'Here's the rest' and pushed it to Leland [the defendant], you know." Prior to presenting the above testimony the defendant had sought to introduce as exhibits two promissory notes. Both notes were signed by Vernon Carriger, identified as defendant's brother, and Valada Mason. Both notes were payable to Leland Carriger in annual installments of $1,000. One note, for $10,000, was dated March 2, 1970; the other for $14,000, was dated September 10, 1970. The government objected to the introduction of the notes and the objection was sustained.

The promissory notes were first offered during the testimony of an attorney who had represented the defendant's brother and had seen the notes in his office, probably in 1971. Though the witness stated that he was familiar with Vernon Carriger's signature, he was not permitted to testify that the signature on the two notes appeared to be that of Vernon Carriger. The notes were next offered as exhibits during the testimony of another attorney who stated that he represented Vernon Carriger for seven or eight years and had also represented the defendant in tax matters. The witness testified that he was able to recognize the signatures of Vernon Carriger and the other signer of the note, Valada Mason. The witness was not permitted to testify that the signatures on the notes were those of Vernon Carriger and Valada Mason because the district court concluded that there was "no foundation at all" for such testimony. Following this ruling the witness testified that he had seen both signers of the two notes sign their names hundreds of times. He was then permitted to identify the signatures on the notes as those of Vernon Carriger and Valada Mason.

When the two notes were again offered in evidence the objection of government

counsel was sustained and they were excluded. The district court held that the tendered exhibits had been adequately identified as purporting to be two promissory notes payable to the defendant and signed by his brother and Valada Mason. However, in concluding that the notes were relevant, but not material, the trial judge stated:

> There has been no witness here that has testified as to the purpose, or the execution of these, what the consideration was, why the notes were transferred, how it is material to this lawsuit, how it accounts for any asset or anything else.

The court then indicated that the notes could be made material by the testimony of any of the three parties to them or by a lawyer who prepared the notes and could identify the transaction of which they were a part.

The district court correctly determined that the promissory notes were relevant evidence. Rule 401, Fed.R.Ev., contains this general definition:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Since the government's opening net worth contained no indebtedness from Vernon Carriger to the defendant, the notes at least had a tendency to make more probable the fact as claimed by the defendant that the opening net worth was inaccurate for failure to include assets owned by him on December 31, 1970. They also tended to make more probable the claim that some of the defendant's 1971 expenditures came from a non-taxable source—the repayment of a pre-existing debt. Since Rule 402, Fed.R. Ev., makes all relevant evidence admissible unless otherwise provided,[2] we must determine whether any exception applies.

In excluding the notes the district court held that they were not material. The Note of Advisory Committee on Proposed Rules appended to Rule 401 criticizes the word "material" as "loosely used and ambiguous." 28 U.S.C.A., Federal Rules of Evidence (1975) at 85. The word "material" does not appear in the federal rules and appears to be subsumed into the language of Rule 401, "any fact that is of consequence to the determination of the action." Since the promissory notes related to the central issues in the case they should not have been excluded on grounds of materiality.

In overruling Carriger's motion for a new trial the district court held that "the promissory notes were properly excluded since no foundation was laid for their admission into evidence; . . . ." In its brief the government equates this language with a holding that the notes were excluded for lack of authentication. Rule 901, Fed.R. Ev., provides in part as follows:

### Rule 901.

### Requirement of Authentication or Identification

**(a) General provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

**(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

**(1) Testimony of witness with knowledge.** Testimony that a matter is what it is claimed to be.

**(2) Nonexpert opinion on handwriting.** Nonexpert opinion as to the genuineness of handwriting, based upon fa-

---

2.      **Rule 402.**

**Relevant Evidence Generally Admissible;
Irrelevant Evidence Inadmissible**

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

miliarity not acquired for purposes of the litigation.

The Note of the Advisory Committee appended to Rule 901 states, "Authentication and identification represent a special aspect of relevancy." 28 U.S.C.A., Federal Rules of Evidence, at 714. This comment ties Rule 901 to Rule 104(b), Fed.R.Ev., which deals with the admission of evidence where relevancy depends upon fulfillment of a condition of fact.[3] See *In re James E. Long Construction Co.*, 557 F.2d 1039 (4th Cir. 1977). Under this rule the district court was required to make a preliminary determination of whether there was sufficient evidence "to support a finding that the matter in question is what its proponent claims." Rule 901(a), *supra.* The requirement of the illustration in Rule 901(b)(2), *supra,* was clearly satisfied by the testimony of the witness who was familiar with the handwriting and signatures of both signers of the notes.

The government argues that exclusion of the notes from evidence was proper because defendant failed to present testimony of a witness with knowledge "that a matter is what it is claimed to be." Rule 901(b)(1), *supra.* This argument echoes the statement of the district court that testimony concerning the underlying transaction was required to make the notes admissible. Actually the notes were sufficiently identified as promissory notes by their production and no further authentication was required by reason of an applicable provision for self-authentication in Rule 902(9), Fed.R.Ev.:

### Rule 902.

#### Self–Authentication

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

\* \* \* \* \* \*

**(9) Commercial paper and related documents.** Commercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law.

The Advisory Committee Note and the Report of the House Committee on the Judiciary indicate that "general commercial law" refers to the Uniform Commercial Code. 28 U.S.C.A., Federal Rules of Evidence (1976) at 734–35; see 11 *J. Moore, Fed. Prac.* § 920.01[b] at IX—31 (2d ed. 1976). Under Uniform Commercial Code § 3–307 mere production of a note is prima facie evidence of its validity and of the holder's right to recover on it.

In *United States v. Goichman*, 547 F.2d 778, 784 (3d Cir. 1976), the court stated:

> Once a prima facie case [of authenticity] is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.

We conclude that the district court erred in requiring further authentication of the promissory notes. Actually, no testimony was required to establish the genuineness of the signatures on the notes. In effect UCC § 3–307 creates a presumption that commercial paper offered in evidence is authentic and Rule 902 dispenses with a requirement of extrinsic evidence for admissibility. By requiring proof of the underlying transaction as a condition for admission the district court denied the defendant the benefit of the rule. Of course, admission of the notes would not have established their genuineness or the existence of an indebtedness conclusively. As the Advisory Committee

---

3.     **Rule 104.**

**Preliminary Questions**
**(a) Questions of admissibility generally.** Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b).

In making its determination it is not bound by the rules of evidence except those with respect to privileges.
**(b) Relevancy conditioned on fact.** When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

Note states, "in no instance is the opposite party foreclosed from disputing authenticity." 28 U.S.C.A., Federal Rules of Evidence (1975), following Rule 902 at 733. In effect the district court required the defendant to prove that the notes were genuine and that a debt existed, whereas only a prima facie showing was required to make them admissible.

As has been pointed out, the notes, together with the testimony of cash transactions between the Carriger brothers, tended to make more probable the defense claims of error in the opening net worth statement and inferences concerning 1971 taxable income. In fact, this was the only evidence presented by the defendant with respect to 1971. The careful consideration required before making a decision to exclude relevant evidence offered by a defendant in any criminal case is even more necessary in a net worth prosecution. After discussing the "pitfalls inherent in the net worth method" the Supreme Court concluded in *Holland v. United States, supra* that great care and restraint is required where this method is employed. Justice Clark wrote for the Court:

> The complexity of the problem is such that it cannot be met merely by the application of general rules. Trial courts should approach these cases in the full realization that the taxpayer may be ensnared in a system which, though difficult for the prosecution to utilize, is equally hard for the defendant to refute. . .
>
> Appellate courts should review the cases, bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation. (citation omitted). 348 U.S. at 129, 75 S.Ct. at 132.

The judgment of the district court is reversed, and the cause is remanded for a new trial.