**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John L. VARNER, Defendant–Appellant.**

No. 92–9089.

United States Court of Appeals,
Eleventh Circuit.

Feb. 10, 1994.

1504

Charles C. Clay, Brock & Clay, P.C., Brian J. Morrissey, Marietta, GA, for defendant-appellant.

James R. Schulz, Asst. U.S. Atty., Atlanta, GA, for plaintiff-appellee.

Before HATCHETT, Circuit Judge, FAY \* and GODBOLD, Senior Circuit Judges.

FAY, Senior Circuit Judge:

The United States filed the instant lawsuit on Assumption Agreements executed by John L. Varner ("Varner") on October 11, 1982, wherein Varner assumed the original debt of William N. Scarbor ("Scarbor"). The district court entered judgment in favor of the United States in the amount of six hundred forty three thousand three hundred five dollars and ninety seven cents ($643,305.97). On appeal, Varner alleges that the district court abused its discretion in: (1) allowing Appellee, the United States, to amend the pretrial order; (2) finding the promissory notes self-authenticating pursuant to UCC § 3–307 and Fed.R.Evid. 902(9); and (3) finding the assumption agreements admissible pursuant to UCC § 3–307 and Fed. R.Evid. 902(9). We find that the district court did not abuse its discretion and affirm the judgment.

## I. FACTS

On July 20, 1979, Farmers Home Administration ("FmHA") made an emergency loan to Scarbor in the principal amount of five hundred thousand dollars ($500,000.00). The note carried an interest rate of nine percent to be paid back in forty one annual installments in the amount of forty six thousand four hundred eighty dollars ($46,480.00). The same day, FmHA made an additional emergency loan to Scarbor in the principal amount of two hundred fifty thousand dollars ($250,000.00) with an interest rate of three percent to be paid back in eight annual installments in the amount of forty thousand

one hundred and twenty eight dollars ($40,128.00).

Each note provided that "[e]very payment made on any indebtedness evidenced by this note shall be applied first to interest accrued as of the date of receipt of the payment and then to principal." (RX–10) In addition each note stated that it "shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof." (RX–11) FmHA Instruction 1915–A § 1951.10 provides,

All payments on all other loans including OL [operating loan] and EM [emergency loan] approved after December 31, 1971, will be credited first to any administrative costs, then to noncapitalized interest, then to the amount of accrued deferred interest, then to interest accrued to the date of the payment and then to principal, in accordance with the terms of the note.

On June 25, 1980, C. Victor Beadles ("Beadles") assumed the two promissory notes executed by Scarbor. Thereafter, on October 11, 1982, defendant, John L. Varner ("Varner"), executed two agreements with FmHA assuming Beadles' indebtedness. Varner agreed to assume Beadles' indebtedness with interest rates of twelve percent and twelve and one-half percent respectively, in the amounts of five hundred fifty four thousand eight hundred forty nine dollars and sixteen cents ($554,849.16) ($487,726.03 in principal and $128,773.04 in accrued interest) and two hundred seventy two thousand six hundred seventy six dollars and seventy five cents ($272,676.75) ($231,287.67 in principal and 71,686.50 in accrued interest).[1]

On August 16, 1985, Jack E. Gary ("Gary"), the County Supervisor for FmHA sent a letter to Varner advising him that his

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. Each assumption agreement executed by Mr. Varner provided, in relevant part that:

 2. The provisions of said debt and security instrument(s) and of any outstanding agreements executed or assumed by the present debtors pertinent thereto, shall, except as modified herein, remain in full force and effect, and the assuming parties hereby assume the obligations of and agree to be bound by and to comply with all covenants, agreements and

conditions contained in said instrument(s) and agreements, except as modified herein, the same as if they had executed them as of the dates thereof as principal obligors, including any obligation to pay the Government an insurance charge in addition to interest, if and as provided in any such instrument(s).

 3. This agreement shall be subject to the present regulation of the Farmers Home Administration and to its future regulations which are not inconsistent with the express provisions hereof.

account was three hundred thirty eight thousand seven hundred twenty three dollars ($338,723.00) in arrears. Varner had not made a single payment in the two years since his assumption of the notes. Gary advised Varner that in order to avoid foreclosure on the property securing the loan, Varner must either: (1) pay the account current; (2) sell the property and pay the account in full; or (3) voluntarily deed the property to the government without a release of liability.

Thereafter, Varner and the FmHA entered into discussions to resolve the indebtedness. On March 16, 1987, Varner's attorney sent a letter to Max Herndon ("Herndon"), State Director for FmHA, acknowledging Varner's indebtedness to FmHA of one million two hundred seventy thousand dollars ($1,270,000.00) and offering to pay nine hundred thousand dollars ($900,000.00) as full and complete settlement of the FmHA notes. FmHA rejected this offer but continued settlement discussions. On April 27, 1987, Varner's attorney sent another letter to Herndon stating that, "we have decided to go ahead with your proposal to pay Farmers Home Administration the sum of $900,000.00 for the release of the Warrior Creek tract." The letter further stated, "[a]fter the payment of these funds and the release of the property, I understand from you that we will then have to deal with the Department of Justice concerning a payout on the balance of the note and work out both the amount to be paid and the terms of payment." (Plaintiff's exhibit 7, Deposition of Jack Gary Nov. 15, 1990).

On May 20, 1987, Varner paid FmHA nine hundred thousand dollars ($900,000.00) in exchange for a release of the security property. The check contained a restrictive endorsement on the back and a notation on the front indicating that the proceeds were to be applied to principal in the amount of seven hundred nineteen thousand thirteen dollars and seventy cents ($719,013.70) and to interest in the amount of one hundred eighty thousand nine hundred eighty six dollars and thirty cents ($180,986.30). At the time of the payment, Varner's attorney spoke with an individual in the FmHA state director's office concerning the restrictive endorsement on the back of the check. There appears to have been no discussion concerning the notation on the front of the check concerning the application of the payment to principal and interest. FmHA deposited Varner's check and released its lien against the real property securing the debt.

On June 10, 1987, Gary sent a letter to Varner's attorney concerning the application of the proceeds. The attorney responded in a letter dated June 23, 1987, stating, "[o]ur intention in this matter, as evidenced by the check, was to pay all of the outstanding principal indebtedness so that the only matter left to discuss was the remaining interest accrued as of 5–20–87." It appears FmHA did not respond to this letter.

On June 13, 1989, the United States filed the instant suit to recover the balance due on the original five hundred thousand dollar ($500,000.00) note in the amount of three hundred ninety one thousand four hundred forty three dollars and thirty seven cents ($391,443.37) principal, plus interest in the amount of thirty one thousand five hundred thirty three dollars and twenty three cents ($31,533.23) as of January 20, 1988, with interest accruing at the rate of one hundred twenty eight and 69.78 cents ($128.6978) per day.

The United States attached a copy of the original promissory note executed by Scarbor to its complaint as Exhibit A. Exhibit B was the Assumption Agreement dated June 25, 1989, wherein Beadles assumed Scarbor's indebtedness. Exhibit C was a copy of the Assumption Agreement dated October 11, 1982, wherein Varner assumed Beadles' indebtedness.

On July 1, 1992, the parties filed a proposed pretrial order that stated, "[d]ocumentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the Court." In conclusion the order stated that, "the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the Court to prevent manifest injustice."[2] (RX–31)

---

2. Federal Rule of Civil Procedure 16(e) contains a similar provision: "The order following a final

On August 19, 1992, the district court held a Pretrial Conference. Pursuant to discussions at the Pretrial Conference, Defendant filed an amendment to Defendant's List of Witnesses to the Pretrial Order. On August 21, 1992, Plaintiff filed a motion to amend Plaintiff's Exhibit List to the Proposed Pretrial Order.[3] The same day, the district court ordered that the Proposed Pretrial Order submitted by the parties on July 1, 1992, as amended at the pretrial conference, constituted the Pretrial Order. The order reiterated that it would not be amended except by order of the court to prevent manifest injustice.

On September 14, 1992, the non-jury trial commenced in district court. As a preliminary matter, the court addressed Plaintiff's August 21, 1992 Motion to Amend the Pretrial Order. The court allowed Plaintiff to amend the exhibit list to include the two original promissory notes signed by Scarbor. The court stated that absent a showing of any specific hardship or unfair surprise on the part of the Defendant, the amendment would be allowed. The court further found that it would result in manifest injustice to the Government not to allow the government to amend its exhibit list to include the original notes.

## II. ISSUES ON APPEAL

This Court finds that there exist three central issues on appeal, and that all other issues raised by the litigants flow directly therefrom or alternatively are without merit. We find that the district court did not abuse its discretion in allowing Plaintiff to amend its list of exhibits as there was no unfair surprise or additional burden imposed on the Defendant by allowing the amendment. This Court further finds that the district court did not abuse its discretion in admitting the

promissory notes into evidence as self-authenticating documents pursuant to Fed. R.Evid. 902(9) and the Uniform Commercial Code ("UCC") § 3–307. In addition, we find that the district court did not err in concluding that the Assumption Agreements were also self-authenticating documents under Fed.R.Evid. 902(9) and general commercial law as codified in the Uniform Commercial Code.

## III. DISCUSSION

### A. AMENDMENT OF PRETRIAL ORDER

■■■ Appellant contends that the district abused its discretion by allowing an amendment to the Pretrial Order without requiring Appellee to show that manifest injustice would result should the court deny the amendment. In *Sherman v. United States,* the Court stated:

> The trial judge is vested with broad discretion to preserve the integrity and purpose of a pretrial order. Basically, these orders and stipulations, freely and fairly entered into, are not to be set aside except to avoid manifest injustice. Fed. R.Civ.P. 16. However, in the interest of justice and sound judicial administration, an amendment of a pretrial order should be permitted where no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight.

*Sherman v. United States,* 462 F.2d 577, 579 (5th Cir.1972)[4]. *See also Atlas Truck Leasing, Inc. v. First NH Banks, Inc.,* 808 F.2d 902, 903 (1st Cir.1987). There is a presumption that a pretrial order will be amended in

---

pretrial conference shall be modified only to prevent manifest injustice."

**3.** Plaintiff moved the district court to amend Plaintiff's Exhibit List of the pretrial order to include: (1) the Promissory Note in the amount of five hundred thousand dollars ($500,000.00) dated July 20, 1979 signed by Scarbor and Virginia P. Scarbor; (2) the Promissory Note in the amount of two hundred fifty thousand dollars ($250,000.00) dated July 20, 1979 signed by Scarbor and Virginia P. Scarbor; (3) the Assumption Agreement dated June 25, 1980 signed

by Beadles for the five hundred thousand dollar ($500,000.00) indebtedness; and (4) the Assumption Agreement dated June 25, 1980 signed by Beadles for the two hundred fifty thousand dollar ($250,000.00) indebtedness. At trial, Appellee withdrew his motion to amend Beadles' Assumption Agreements.

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent those cases decided in the Fifth Circuit prior to October 1, 1981.

the interest of justice and sound judicial administration provided there is no substantial injury or prejudice to the opposing party or inconvenience to the court. Upon a finding that an amendment to the pretrial order would result in either substantial injury to the opposing party or inconvenience to the court, the pretrial order should only be amended to avoid manifest injustice. Failure to amend a pretrial order to avoid manifest injustice, or where an amendment would be manifestly unjust, may constitute an abuse of discretion. Abuse of discretion occurs when the court "misconstrues its proper role, ignores or misunderstands relevant evidence, and bases its decisions upon considerations having little factual support." *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 374 (11th Cir.1992).

At the commencement of the non-jury trial on September 14, 1992, the district court judge considered, as a preliminary matter, Appellee's Motion to Amend the Pretrial Order filed August 21, 1992. The court determined that the exhibits in Plaintiff's proposed exhibit list may establish a critical element of Plaintiff's case, the exclusion of which may thwart the court's dispensation of justice and sound judicial administration. The court then inquired of Defendant's counsel the prejudicial effect occasioned should the amendment be allowed and concluded that in the absence of a specific showing of prejudice, the amendment would be permitted.

█ This case involves a simple suit on a promissory note. The defendant was aware of the proposed amendment to the pretrial order for some three weeks prior to trial and plaintiff's exhibit list was relatively short. Defendant should have anticipated having to defend against the introduction of the promissory notes and assumption agreements as they constituted the basis of the lawsuit. Allowing the amendment did not significantly alter the defendant's case. The district court conducted the proper inquiry of whether to allow the amendment and arrived at a decision that is supported by the record. Therefore, this Court concludes the district court did not abuse its discretion in allowing Plaintiff to amend the exhibit list.

## B. SELF–AUTHENTICATION OF THE PROMISSORY NOTE

Appellant asserts that the district court abused its discretion in finding that the promissory notes executed by Scarbor were self-authenticating under Fed.R.Evid. 902(9) [5] and UCC § 3–307.[6] Specifically, Appellant contends that UCC § 3–307 is inapplicable to the promissory notes because: (1) this is not an action to enforce the obligation against the purported signer William Scarbor; (2) Varner's answer stating he "was without knowledge or information sufficient to form a belief as to the truth of the allegations" concerning the note, constituted a specific denial sufficient to preclude the presumption of authenticity; and (3) the provision in the note stating that it was subject to the regulations of the Farmers Home Administration made the note a conditional promise to pay, thus not an "instrument" as defined by the UCC.

Appellant's first argument is wholly without merit. The plain language of UCC § 3–307 states that the presumption of authenticity does not arise if the action is to enforce the obligation of the purported signer who has died or become incompetent before the evidence is required. The instant action is not to enforce the obligation of the purported signer who has died or become incompetent, therefore, under UCC § 3–307, the presumption of authenticity attaches to the notes.

---

5. Fed.R.Evid. 902 provides in pertinent part:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

\* \* \* \* \* \*

(9) **Commercial paper and related documents.** Commercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law.

6. UCC § 3–307 states in pertinent part:

(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue

(a) the burden of establishing it is on the party claiming under the signature; but

(b) the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required.

■ Second, although the Official Comment to UCC § 3–307 intimates that if permissible under local rules a denial of authenticity "may be on information and belief, or it may be a denial of knowledge or information sufficient to form a belief," [7] the balance of the Official Comment requires a more specific denial to negate the presumption of authenticity and warrant the exclusion of the document from evidence. Thus, we find Appellant's general denial [8] of the allegations contained in paragraph three of the Complaint,[9] while sufficient to place the authenticity of the instrument at issue for trial [10], was insufficient to deny the authenticity of the promissory note and preclude its admission.[11]

■ Third, the provision in the note stating that it was subject to the regulations of the FmHA does not have the effect of making the note a conditional promise to pay. *See generally, Matter of Ascot Mortg., Inc.,* 153 B.R. 1002, 1013 (Bankr.N.D.Ga.1993). Mere production of a note establishes prima facie authenticity and is sufficient to make a promissory note admissible. *United States v. Carriger,* 592 F.2d 312, 316–17 (6th Cir. 1979). Accordingly, in the absence of any evidence to support Appellant's general denial, Appellee sufficiently authenticated the promissory notes for admission by their production.

## C. SELF–AUTHENTICATION OF THE ASSUMPTION AGREEMENTS [12]

■ In its order, the district court stated that the assumption agreements were prop-

---

7. The Official Comment to UCC § 3–307 states:

 1. Subsection (1) is new, although similar provisions are found in a number of states. The purpose of the requirement of a specific denial in the pleadings is to give the plaintiff notice that he must meet a claim of forgery or lack of authority as to the particular signature, and to afford him an opportunity to investigate and obtain evidence. Where local rules of pleading permit, the denial may be on information and belief, or it may be a denial of knowledge or information sufficient to form a belief. It need not be under oath unless the local statutes or rules require verification. In the absence of such specific denial the signature stands admitted, and is not in issue....

 The question of the burden of establishing the signature arises only when it has been put in issue by specific denial.... The burden is on the party claiming under the signature, but he is aided by the presumption that it is genuine or authorized [as] stated in paragraph (b). "Presumption" is also defined in this Act (Section 1–201). It means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized the plaintiff is not required to prove that it is authentic. The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and ... therefore [the defendant is] required to make some sufficient showing of the grounds for his denial before the plaintiff is put to his proof. His evidence need not be sufficient to require a directed verdict in his favor, but it must be enough to support his denial by permitting a finding in his favor.

8. Appellant's answer to paragraph three of Appellee's original complaint stated:

 Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 of Plaintiff's Complaint.

9. Paragraph three of Appellee's original complaint states:

 For valuable consideration and to evidence a loan obtained from the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, William N. Scarbor executed a promissory note described as follows ... The United States of America, at all times prior hereto and presently, is the owner and holder of this promissory note, a copy of which is attached hereto as Exhibit A and incorporated herein by reference.

10. *Ingersoll–Rand Financial Corp. v. Anderson,* 921 F.2d 497, 501 (3rd Cir.1990).

11. We recognize that courts in other jurisdictions have also interpreted UCC § 3–307 to require a specific denial of the validity of the signature and hold that a general denial has the legal effect of admitting the signature. *See, United States v. Country Kettle, Inc.,* 738 F.Supp. 1358, 1361 (Kan.1990); *Ferris v. Nichols,* 245 So.2d 660, 661 (Fla. 4th DCA 1971); *Lipton v. Southeast First Nat. Bank of Miami,* 343 So.2d 927, 928 (Fla. 3d DCA 1977); *Wildfang Miller Motors, Inc. v. Rath,* 198 N.W.2d 210, 211 (N.D.1972); *Bentz v. Mullins,* 24 Ohio App.2d 137, 265 N.E.2d 317, 319 (1970); *Farmers & Merchants State Bank v. Mann,* 87 S.D. 90, 203 N.W.2d 173, 174–75 (1973).

12. We find that Appellant's challenge to the authenticity of the Promissory Notes and Assumption Agreements boarders on frivolity. Appellant challenges the authenticity of the very documents he attached as Exhibit A and B to his Response

erly authenticated and admissible pursuant to Fed.R.Evid. 902(9) and UCC § 3–307. Appellant contends that the district court abused its discretion in finding the agreements self-authenticating because in order to do so the court must have necessarily determined that the assumption agreements are "instruments" as defined by Article 3 of the UCC.

 While the assumption agreements may not qualify as "instruments" under Article 3, they are self-authenticating pursuant to Fed.R.Evid. 902(9) as "documents relating thereto."[13] The language of Fed.R.Evid. 902(9) encompasses a broader range of self-authenticating documents than does Article 3 of the UCC. Moreover, the trial record indicates that Appellee properly authenticated the assumption agreements pursuant to Fed. R.Evid. 901.[14] Therefore, we find that the district court did not abuse its discretion in admitting the assumption agreements.

In sum, we find that the district court did not abuse its discretion in allowing Appellee to amend the pretrial order, in finding the promissory notes self-authenticating pursuant to UCC § 3–307 and Fed.R.Evid. 902(9), or in concluding that the assumption agreements were admissible pursuant to UCC § 3–307 and Fed.R.Evid. 902(9). ACCORDINGLY, we AFFIRM the judgment of the district court.

GODBOLD, Senior Circuit Judge:

I concur in the result.

to Plaintiff's Motion for Summary Judgment; the same documents which only evidence the indebtedness he acknowledged in his Outline of the Case. (RX–33)

13. *See supra* note 5.

14. A reading of the trial transcript indicates that Appellant also provided sufficient basis authenticating the Assumption Agreements pursuant to Fed.R.Evid. 901(a), (b)(1) and (b)(2) through the testimony of Jack Gary. Appellant also overcame any hearsay objections to the documents by qualifying the documents under Fed.R.Evid. 803(6). (R4–38–50)