[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13338

_____

VFS LEASING CO.,

Plaintiff-Appellee,

*versus*

MARKEL INSURANCE COMPANY,

Defendant,

MARKEL AMERICAN INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-01297-TPB-JSS

_____

Before JORDAN, LAGOA, and TJOFLAT, Circuit Judges.

LAGOA, Circuit Judge:

Markel American Insurance Company issued a joint check to VFS Leasing Co. ("VFS") and Time Definite Leasing, LLC, ("TDL"), as non-alternative co-payees. TDL cashed the check without VFS's knowledge or approval and kept the proceeds for itself. VFS then sued Markel American for breach-of-contract, arguing that Markel American was liable for the amount from the joint check that was owed to VFS. This appeal requires us to decide whether, as a matter of Florida law, Markel American's obligation to VFS was discharged when the joint check was improperly accepted by the drawee bank and payment was made solely to TDL. After careful review, and with the benefit of oral argument, we conclude that under Florida Statute § 673.4141(3), a drawer is discharged of its payment obligation when a jointly issued check is accepted by a drawee bank. We therefore reverse the district court's entry of summary judgment in favor of VFS.

## I.    FACTUAL & PROCEDURAL BACKGROUND

The essential facts are largely undisputed. From 2016 to 2018, VFS leased certain trucks to TDL. TDL was required to (a)

insure the trucks and name VFS as an additional insured, loss payee, or both, on the relevant policies and (b) provide VFS with certificates of insurance ("COIs") confirming the coverage. TDL bought appropriate coverage from Markel American and, on the COIs, listed VFS as a loss payee. During the term of coverage, TDL filed claims for damage to some of the trucks, and Markel American issued five checks written out to TDL *"and"* VFS as co-payees. But, as it turns out, VFS never saw any of those funds.

VFS sued Markel American for breach of contract.[1] In its single-count complaint, VFS alleged that Markel American was required to notify VFS of any claims for equipment on which it was an additional insured; issue joint checks for any claims for equipment on which VFS was an additional insured; and pay VFS for all losses incurred under the policies, including losses for which VFS was named loss payee—and that Markel American had failed to do any of these things.

VFS noted that two COIs identified an insurance policy where Markel American was listed as the insurer, TDL was listed as the insured, and VFS was listed as the certificate holder. VFS alleged that TDL had provided Markel American with sworn proof of loss statements for five insurance losses in 2017 and 2018, each

---

[1] VFS first sued Markel Insurance Company in Florida state court. Markel Insurance Company removed the action to federal court based on diversity jurisdiction. VFS them amended its complaint, adding Markel American as a defendant. Markel Insurance Company was later dismissed from the action, leaving Markel American as the sole defendant.

relating to damages to equipment for which VFS was designated as either a loss payee or an additional insured. According to VFS, TDL received insurance funds related to some of these losses, but TDL never told VFS about the payout. VFS demanded copies of documentation regarding the claims from Markel American, but Markel American did not provide that information. Based on all this, VFS alleged that Markel American breached the insurance contract by failing to notify VFS of the claims, failing to issue joint checks, and failing to pay VFS for the losses incurred during the proof of loss period, including losses for which it was named loss payee.

Following discovery, Markel American moved for summary judgment. Markel American agreed that it had issued five checks for the five claims TDL made.[2] Markel American noted, however, that the checks—copies of which it attached to its motion—were paid "to the order of" both TDL "*and*" VFS. (emphasis added). Markel American stated that, by using the word "and," the checks should have only been cashed and negotiated by both parties, not one party acting alone. But, Markel American argued, provisions of Florida's version of Uniform Commercial Code art. 3 provided that "the responsibility of verifying the payments and how instruments should be negotiated is not on the maker, but the party that is cashing/processing the instrument." It claimed that the remedy

---

[2] The check amounts were: (1) $105,000 on 9/20/18; (2) $127,427 on 2/20/18; (3) $170.870.90 on 2/15/18; (4) $72,466.67 on 7/23/18; and (5) $97,639.75 on 9/20/18.

available to VFS, as a party that should have received payment on a negotiable instrument, was to sue the bank for conversion rather than sue the issuer for breach of contract. Markel American also asserted that there was nothing in the Policy's language requiring it to take additional actions beyond what it did, nor to physically monitor what happens with settlement payments after they properly issue. In other words, Markel American argued that it was not responsible for either the wrongdoing or conversion of a check by a payee or the negligence of a financial institution.

VFS opposed Markel American's motion for summary judgment and filed its own cross-motion. VFS asserted that Markel American breached its insurance contract to pay VFS, which was an intended third-party beneficiary of that contract, as an additional insured and loss payee. VFS noted that its collateral equipment was the subject of the proofs of loss that TDL submitted to Markel American. Further, VFS argued that, under the Uniform Commercial Code ("UCC"), "[b]ecause the instrument was payable jointly, and VFS did not endorse the instrument, Markel American's obligation to VFS was not discharged under the plain language of the UCC and remains outstanding."

VFS recognized that the issue was one of first impression in Florida but pointed to other states' decisions holding that "payment to one nonalternative copayee without the endorsement of the other is not payment . . . [and] does not discharge the drawer of either his liability on the instrument or his underlying obligation." *See McAllen Hosps., L.P. v. State Farm Cnty. Mut. Ins. Co. of*

*Tex.*, 433 S.W. 3d 535, 539 (Tex. 2014); *State ex rel. N.D. Hous. Fin. Agency v. Ctr. Mut. Ins. Co.*, 720 N.W.2d 425, 429–30 (N.D. 2006); *Gen. Motors Acceptance Corp. v. Abington Cas. Ins. Co.*, 602 N.E. 2d 1085, 1088 (Mass. 1992); *Crystaplex Plastics, Ltd. v. Redevelopment Agency*, 92 Cal. Rptr. 2d 197 (Ct. App. 2000). VFS asserted that the fact that other parties could also be liable to it did not preclude it from recovering against Markel American and that Markel American, as the drawer, had sufficient remedies against the drawee bank and adequate protection under the circumstances.

The district court granted VFS's cross-motion for summary judgement and entered judgment in VFS's favor for $573,404.32. As relevant to this appeal, the district court noted that Florida's codification of UCC Article III in chapter 673 of the Florida Statutes governed the case. After recognizing the absence of clearly controlling Florida law and surveying other jurisdictions' treatment of the issue when applying the identical, or nearly identical, UCC provisions to nearly identical facts, the district court concluded that the bank's acceptance of the check did not discharge Markel American from its liability on the check and underlying contractual obligation to VFS. In other words, VFS was able to bring its breach of contract action against Markel American.

The district court then found that VFS had presented evidence of its damages in the amount of $537,404.32 and that Markel American had presented no evidence to create a material dispute of fact as to those damages. And the district court determined that

Markel American's affirmative defenses lacked merit.[3]  Therefore, the district court concluded that VFS was entitled to summary judgment on its breach of contract claim.

This timely appeal ensued.

## II.     STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, including any issues involving the interpretation and application of statutory provisions.  *Catalyst Pharms., Inc. v. Becerra*, 14 F.4th 1299, 1306 (11th Cir. 2021).

## III.     ANALYSIS

On appeal, Markel American contends, among other things, that Florida Statute § 673.4141(3) relieves it from liability.  VFS counters that Markel American waived this argument because it never cited to that specific statutory provision in the district court.

Our analysis thus proceeds in two parts.  First, we address whether Markel American waived its § 673.4141(3) argument by failing to raise it below.  Second, we address whether, if there was no waiver, Markel American's obligation to VFS was discharged under Florida law when the bank improperly accepted the joint check and payment was made solely to TDL.

## A.  Waiver

---

[3] None of these affirmative defenses are raised on appeal.  The sole issue is the UCC interpretation discussed  below.

We have "repeatedly held that 'an issue not raised in the district court and raised for the first time in an appeal will not be considered.'" *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quoting *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994)). "But there is a difference between raising new issues and making new arguments on appeal." *In re Home Depot, Inc.*, 931 F.3d 1065, 1086 (11th Cir. 2019). When an issue has been "'properly presented, a party can make any argument in support of that [issue]; parties are not limited to the precise arguments they made below.'" *Id.* (alteration in original) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992); *accord Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 883 n.5 (11th Cir. 2017) ("Parties can most assuredly waive positions and issues on appeal, but not individual arguments . . . . Offering a new argument or case citation in support of a position advanced in the district court is permissible—and often advisable." (citation omitted)); *ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 113 F.4th 1312, 1320 (11th Cir. 2024) ("Litigants can waive or forfeit positions or issues through their litigation conduct in the district court but not authorities or arguments.")).

Even though Markel American did not cite to the district court the statutory provision that it highlights on appeal, its theory has consistently been that its obligation to VFS was discharged when the bank accepted the joint checks. In its summary judgment motion, Markel American argued that "any theory of wrongdoing on the negotiation of the instruments is enforceable against JP Morgan Chase, the bank that cashed the checks, not the payor, Markel." And, in its response to VFS's cross-motion, Markel American

argued: "Florida law again held that if a settlement check, after being issued, is subject to forgery or conversion but is cashed, it is the bank that cashes it that is responsible to the victim that did not receive the funds—not the maker of the check," and "there is ample Florida law that is directly on point with respect to this issue, which clearly relieves [Markel American] of liability in this situation at hand." On appeal, even VFS acknowledges that one of Markel American's arguments below was that VFS's "exclusive remedy is against the bank that cashed the checks" and that "only the drawee bank is liable." Thus, we conclude that Markel American did not waive or forfeit its § 673.4141(3) argument.

## B. Markel American's Obligation to VFS

The merits of this appeal hinge on a question of first impression under Florida law: whether a drawer (Markel American) who issues a joint check to nonalternative co-payees (VFS and TDL) remains liable to one co-payee where the drawee bank improperly accepts the check being cashed by only one of the co-payees, without the other co-payee's knowledge, involvement, or endorsement.

### 1. *Applicable Legal Standard*

Because the Florida Supreme Court has not yet addressed this issue, "we must predict how the highest court would decide this case." *SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335, 1342 (11th Cir. 2023) (quoting *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018)). In making this prediction, this Court is "bound to adhere to the decisions of the state's intermediate appellate courts absent

some persuasive indication that the state's highest court would decide the issue otherwise." *Id.* (quoting *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1254, 1262 (11th Cir. 2014)).

Here, we must interpret and apply chapter 673 of the Florida Statutes, which corresponds to Article 3 of the UCC. *See Warren Fin., Inc. v. Barnett Bank of Jacksonville, N.A.*, 552 So. 2d 194, 196 n.2 (Fla. 1989) (noting that Florida has adopted the provisions of the UCC). In interpreting the UCC, both this Court and Florida courts begin with the plain language of the UCC provisions at issue. *See United States v. Varner*, 13 F.3d 1503, 1508 (11th Cir. 1994); *SEC v. Elliot*, 620 So. 2d 159, 160 (Fla. 1993). Additionally, in interpreting Florida's UCC provisions, Florida courts often look to the UCC and its comments for guidance. *United Auto. Ins. Co. v. Rivero Diagnostic Ctr., Inc.*, 327 So. 3d 376, 380 n.2 (Fla. 3d Dist. Ct. App. 2021).[4] Further, "in the absence of any case law in Florida, 'where a Florida statute is patterned after a statute of another state, we may look to the judicial interpretation of the other state as persuasive authority in interpreting the Florida statute.'" *Id.* at 380 (quoting *Dunn v. Doskocz*, 590 So. 2d 521, 523 (Fla. 3d Dist. Ct. App. 1991)).

### 2. *Sections 673.4141 and 673.1101 of Florida's UCC*

Having earlier determined that Markel American did not waive its § 673.4141 argument, we must reconcile two provisions of Florida's UCC. Section 673.4141(3) states that "[i]f a draft is

---

[4] One Florida appellate court has suggested that the Florida Legislature adopted "the UCC and the comments thereto[.]" *Nat'l Bank of Sarasota v. Dugger*, 335 So.2d 859, 861 (Fla. 2d Dist. App. 1976).

22-13338               Opinion of the Court                    11

accepted by a bank, the drawer is discharged, regardless of when or by whom acceptance was obtained." Markel American argues that this provision is dispositive in its favor. Section 673.1101(4), on the other hand, states that where "an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them."[5] *Id.* VFS argues that this provision, on which the district court relied, carries the day in its favor.

The district court found that there was a split of authority as to whether the drawer's obligation on a draft is discharged when a joint payee unilaterally and improperly cashes a two-party check accepted by the drawee bank. We survey the relevant case law as to each theory.

Markel American contends that we should adopt the Seventh Circuit's approach in *Thirteen Inv. Co. v. Foremost Ins. Co. Grand Rapids Mich.*, 67 F.4th 389 (7th Cir. 2023)—the only one of our sister

---

[5] Comment 4 to § 673.1101 provides, in part:

> If an instrument is payable to X and Y, neither X nor Y acting alone is the person to whom the instrument is payable. Neither person, acting alone, can be the holder of the instrument. The instrument is "payable to an identified person." The "identified person" is X and Y acting jointly. Section 3-109(b) and Section 1-102(5)(a). Thus, . . . X or Y, acting alone, cannot be the holder or the person entitled to enforce or negotiate the instrument because neither, acting alone, is the identified person stated in the instrument.

§ 673.1101 cmt. 4.

circuits to have directly addressed this issue. In *Thirteen Investment Co.*, the plaintiff's building suffered fire damages covered by the defendant insurance company's policy. *Id.* at 391. The plaintiff then hired a third party to be its public adjuster and general contractor. *Id.* The plaintiff directed any insurance companies to include the third party on all payments relating to the loss. *Id.* Subsequently, the third party negotiated the fire loss, and the defendant insurance company delivered settlement checks to the third party, listing plaintiff, plaintiff's mortgagee, and the third party as co-payees. *Id.* The third party, however, endorsed the names of all the co-payees, cashed the checks, and kept the proceeds. *Id.* Although the third party performed some repair work on the building, the plaintiff ultimately fired it as its general contractor. *Id.* Then, the plaintiff sued the defendant insurance company, seeking a declaratory judgment that the insurer had breached its policy by not paying the claim. *Id.* The district court granted summary judgment in favor of the defendant, finding that when the third party received and cashed the checks, that discharged the defendant's obligation under the policy. *Id.*

On appeal, the Seventh Circuit addressed the following question: "Does a contract obligor's delivery of a check to a joint co-payee, who then unilaterally cashes the check, discharge the obligor's performance in the amount of the check?" *Id.* at 392. Looking to Illinois's version of the UCC and relying on a statute identical to Florida Statute § 673.4141(3), the Seventh Circuit concluded that the defendant's performance obligation was discharged when the checks endorsed by the third party were accepted by the

defendant's bank. *Id.* at 393. The Seventh Circuit also noted that its interpretation aligned with the two Illinois state courts to address the same (or similar) issue. *See id.* at 393–94; *see also Affiliated Health Grp., Ltd. v. Devon Bank*, 258 N.E.3d 772, 777 (Ill. App. Ct. 2016) ("[W]e agree with the Insurers that because the drafts were accepted by the banks, the Insurers' obligation to pay for the medical services performed by Affiliated was discharged pursuant to section 3–414(c).").

In contrast, the approach primarily relied on by the district court adopts the reasoning in *McAllen Hospitals, L.P. v. State Farm County Mutual Insurance Co. of Texas*, 433 S.W.3d 535 (Tex. 2014). *McAllen* dealt with a Texas hospital lien statute under which a release of the lien required that "the Hospital's charges were "paid . . . to the extent of any full and true consideration paid to" the individuals. *Id.* at 538. Two individuals were involved in a car accident with a third individual who was insured by State Farm. *Id.* at 537. The first two individuals were treated by the plaintiff hospital, which filed hospital liens against them. *Id.* Then, those two individuals settled with the third individual and released their claims against him. *Id.* The plaintiff hospital was not a party to the releases nor was it informed of the settlement. *Id.* State Farm told the individuals that they were responsible for paying the hospital out of the settlement funds and issued a joint check that was payable to the individuals and the hospital. *Id.* The individuals, however, deposited the checks without the hospital's endorsement, leaving the hospital's charges outstanding. *Id.* The hospital then sued State Farm to enforce the hospital liens. *Id.* The trial court

granted summary judgment in favor of State Farm, and the state appellate court affirmed. *Id.* But the Texas Supreme Court reversed.

State Farm argued that "by issuing settlement checks to the patients and the Hospital as co-payees, and delivering those checks to the patients, State Farm made a good-faith effort to pay the Hospital's charges 'to the extent of any full and true consideration' paid to" the individuals. *Id.* at 538. Thus, State Farm contended, it effectively paid the hospital, "even though the Hospital was never notified that the claims had been settled, never endorsed the checks, and never received any compensation for the patients' treatment costs." *Id.* The hospital responded that because it never received actual compensation, it was not paid as required. *Id.*

In analyzing Texas's statutory equivalent to UCC § 3-110 (and Florida Statute § 673.1101), the Texas Supreme Court noted that Massachusetts' highest court had applied the same language and concluded that (1) one co-payee could not have become a holder of a draft without the other co-payee's endorsement, (2) "[w]ithout payment to a holder, the liabilities of the parties to the check are not discharged," and (3) "payment of a check to one co-payee without the endorsement of the other copayee does not discharge the drawer of either his liability on the instrument or the underlying obligation." *Id.* at 539–40. Agreeing with this analysis, the Texas Supreme Court held that "State Farm's actions did not constitute payment to a 'holder' under the UCC, and therefore

State Farm was not discharged of its underlying obligations." *Id*. at 541.

Turning to the Florida UCC, we note that there is some tension between the two provisions that the parties urge us to apply. Section 673.1101(4) states that joint payees must act together, such that discharge of the obligation can only occur "by all of them." In contrast, § 673.4141(3) states that the drawer's obligation is discharged upon acceptance by a bank. At first blush, it appears difficult to reconcile these two statutory mandates.

Ultimately, we agree with the Seventh Circuit's analysis in *Thirteen Investment Company* and conclude that § 673.4141(3) controls the outcome here. It is true that, for a check with non-alternative co-payees, § 673.1101(4) states that a single co-payee, acting alone, cannot be the holder of the instrument and that an instrument cannot be negotiated, discharged, or enforced by that single payee. But § 673.1101(4) mainly deals with the concept of whether a single co-payee, acting alone, is a "holder" of that draft. *McAllen*, for instance, concluded that the obligation was not discharged specifically because payment was never made to a *holder* under Texas's statutory equivalent to § 673.1101(4). 433 S.W.3d at 541. In other words, as relevant here, § 673.1101(4) tells the drawee-bank who it should recognize as the "holder" of the draft being presented to it.

On the other hand, § 673.4141(3) explicitly states that when "a draft is accepted by a bank, the drawer is discharged, *regardless of when or by whom acceptance was obtained*." (Emphasis added). Notably, this UCC provision was changed from its former version

"which provided that the drawer is discharged only if the *holder* obtains acceptance." § 673.4141 cmt.3. (emphasis added). Therefore, under Florida's version of the UCC, it is immaterial whether TDL was or was not a "holder" under § 673.1101(4), because under § 673.4141(3), a bank's acceptance[6] of the draft discharges the *drawer's* obligation either way. In other words, § 673.4141(3) insulates the drawer of a properly-issued draft from the risk that a bank will fail to recognize the proper holder identified by § 673.1101(4).

As in *Thirteen Investment Company*, the drawee-bank here disbursed, solely to TDL, the payment that covered VFS's incurred losses under its insurance policy. Under § 673.1101(4), TDL was not the holder of the draft, and the bank's acceptance of the draft upon presentation by TDL appears to be contrary to that statute's instruction. But under § 673.4141(3), the bank's acceptance of the draft discharged Markel American's performance obligation on the claim.[7] In effect, VFS seeks to impose upon an insurer a duty of performance that exceeds the insurer's obligations under the insurance contract. Markel American agreed to provide coverage and

---

[6] Florida Statute § 673.4091(1) (UCC § 3-409) states that "acceptance" means "the drawee's signed agreement to pay a draft as presented," and "[a]cceptance must be written on the draft and may consist of the drawee's signature alone."

[7] A key term here is "discharge." Florida Statute § 673.6011 (UCC § 3-601) deals with "discharge and effect of discharge" and provides that "[t]he obligation of a party to pay the instrument is discharged as stated in this chapter or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract."

payment for negotiated claims. It did not, however, agree to assume responsibility for the bank's lack of diligence in paying a draft.

To be clear, a party in VFS's position is not without recourse. As the Seventh Circuit noted in *Thirteen Investment Company*, the plaintiff could have sued the bank as a remedy. 67 F.4th at 394. We agree here. Section 673.3101(1) of the Florida Statutes (UCC § 3-301) states that if a "check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken" and "suspension of the obligation continues until dishonor of the check or until it is paid or certified." Section 673.3101's comment 4 also states: "[i]f the payor bank pays a person not entitled to enforce the instrument, . . . the suspension of the underlying obligation continues because the check has not been paid" and that "[t]he payee's cause of action is against the depositary bank or payor bank in conversion under Section 3-420 or against the drawer under Section 3-309."[8] *Id.* *Accord 2 James A. White, Robert S. Summers, & Robert A. Hillman*, Uniform Commercial Code § 19:6 (6th ed. & August 2024 update) (explaining that in cases of forged indorsements both the depositary bank and the drawee bank can be sued); 4 *Couch on Insurance* § 61:9 (3d ed. & June 2024 update) ("When the insurer makes payment of the proceeds of insurance to the person who, by the policy, is the proper recipient, the payment is a discharge of the liability of the insurer. . . . The

---

[8] The "lost, destroyed, or stolen instruments" UCC provision of § 3-309 (Fla. Stat. § 673.3091) is not applicable here.

fact that a third party unlawfully converts the policy proceeds after they are received by the proper person as named in the contract does not give rise to a cause of action against the insurer by a beneficiary who was properly entitled to the proceeds.").

Therefore, and in light of § 673.4141(3), the proper remedy here is a conversion claim against the drawee bank. This also reconciles any apparent tension between the two Florida UCC provisions. While Markel American's obligation has been discharged under § 673.4141(3), the underlying obligation on the checks themselves has not been discharged under § 673.1101(4), but rather suspended under § 673.3101, and it may still be enforced against the bank.

## IV.    CONCLUSION

For these reasons, we conclude that, under Florida Statute § 673.4141(3), a drawer is discharged of its payment obligation when a jointly issued check is accepted by a drawee bank. The district court thus erred when it granted VFS's cross-motion for summary judgment. Accordingly, we reverse the district court's entry of summary judgment in favor of VFS and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**