TOM MIYATA *et al.*, d/b/a Piccadilly Auto Rebuilders *et al.*, Plaintiffs and Counterdefendants-Appellees, *v.* PEERLESS INSURANCE COMPANY *et al.*, Defendants.—(FORD MOTOR CREDIT COMPANY, Defendant and Counterplaintiff-Appellant.)

First District (5th Division)    No. 80-0105

Opinion filed April 10, 1981.

David I. Herbst, of Portes, Sharp, Herbst & Kravets, Ltd., of Chicago, for appellant.

Merrill B. Meyer, of Rappaport & Meyer, of Chicago, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

After rebuilding a damaged automobile, plaintiffs brought an action to obtain payment from the proceeds of an insurance policy which covered the vehicle. The sole issue is whether, under the facts of this case, plaintiffs are entitled to this insurance money.

Plaintiffs are in the auto repair and rebuilding business. Joyce Williams sent her car to them in March of 1977, after it had been extensively damaged in a collision. The car was insured by Peerless Insurance Co. and, after obtaining approval from its claims adjuster, plaintiffs repaired the car.

A draft for $2,229.22, issued by Peerless as payment for the damage loss, was payable to Williams, Ford Motor Credit Co., and plaintiffs. Williams had purchased the car under an installment contract and Ford Credit was the seller's assignee. Ford Credit's security interest was recorded before plaintiffs obtained possession of the damaged vehicle.

The installment contract (1) required Buyer to obtain insurance on the vehicle; (2) assigned the insurance proceeds to Seller, and (3) provided that, "The proceeds from such insurance, by whomever obtained, shall be applied toward replacement of the property or payment of the indebtedness hereunder in the sole discretion of the seller."

When Williams endorsed and delivered the plaintiffs the insurance company draft, they released the rebuilt vehicle. Despite the fact that the insurance draft was payable to Williams, Ford Credit, and plaintiffs, jointly, plaintiffs do not claim that they notified Ford Credit before releasing the vehicle to Williams. Reciting the stipulated facts to the trial court, plaintiffs counsel said that,

> "[O]ur records show that when we released the car to Joyce Williams back in 1977, May the 6th, 1977, our records show, and Mr. Miyata will testify that she promised to take the car over to Ford Credit to make sure she [sic] would sign the check, if there was any problem, and we had—we then, continued to call Ford Credit, practically continuously, to have them sign the check."

Ford Credit did not see the vehicle until it was recovered—completely wrecked—from a Chicago Police Department Auto Pound on November 17, 1977. Because Ford Credit refused to endorse the insurance draft, plaintiffs filed a "Complaint To Direct The Defendant To Sign A Check And For Damages For Defendant's Malicious Refusal To Do So." Count 2 of the amended verified complaint alleges that Peerless Insurance (1) authorized the repair work but failed to issue a draft payable only to Williams and plaintiffs; (2) failed to inform plaintiffs that Ford Credit should have been notified before the car was released to Williams; and (3) "induced plaintiffs, by issuance of the check, to release the repaired automobile and their lien thereon."

Despite these allegations, the insurance company was dismissed from the case, by agreed order, when it deposited with the court a draft for $2,229.22 payable to the clerk of the circuit court. The dismissal was with prejudice.

Relying on its prior perfected security interest, and its contractual claim to the proceeds, Ford Credit filed a counterclaim to obtain the insurance money. After considering the stipulated facts, the trial court dismissed the counterclaim and ordered the clerk to pay the proceeds to the plaintiffs.

OPINION

Ford Credit argues that plaintiffs had no statutory lien, and that they waived their common-law artisan's possessory lien when they released the vehicle to Williams. Therefore, Ford Credit concludes that plaintiffs have no possible claim to either the vehicle or the insurance proceeds. In reply, plaintiffs state that the law of liens is irrelevant to their theory of the case:

"The argument of defendant-Appellant as to lien, concerns rights to possession of a vehicle. In this case, the question is not as to rights of [*sic*] a vehicle, but rights of a mechanic who deals with an insurance company, which directs that he make repairs and then issues its check to cover these repairs."

Accordingly, we decide only whether, under the facts of this case, plaintiffs have a right to be paid from insurance proceeds for rebuilding and repair work.

■■ An insurance contract does not run with or attach to the insured property. (*Peoples State Bank v. Marlette Coach Co.* (10th Cir. 1964), 336 F. 2d 3.) Consequently, a lienholder or creditor who was not a party to the contract of insurance cannot complain that it did not receive benefit of the contract. (*Peoples State Bank.*) When a secured creditor is the beneficiary of an insurance policy which covers the motor vehicle in which it has a security interest, a mechanic who rebuilds or repairs the vehicle, at the request of the owner, is not entitled to payment from the insurance proceeds. (*Wray-Dickinson Co. v. Commercial Credit Co.* (La. App. 1939), 192 So. 769.) The reason for this rule is that, when a mortgagee is named as the sole beneficiary under an insurance policy, the mortgagor has no right, under the policy, to these proceeds. So, even if the damage is repaired at the mortgagor's request, the mortgagor has no right to assign, to the mechanic, proceeds which, by contract, belong to the mortgagee. 5A Appleman, Insurance Law & Practice §3407, at 329-30(1970).

In *McGraw-Edison Credit Corp. v. Allstate Insurance Co.* (1978), 62 App. Div. 2d 872, 406 N.Y.S. 2d 337, a creditor claimed both a contractual and an equitable right to insurance proceeds. The creditor had a security

interest in the destroyed property, but the insurance policy was payable solely to a purchaser who was not a party to the security agreement. Because the creditor was not a party to the insurance contract, and it had no agreement with the loss payee concerning the insurance, the court concluded that the creditor was not entitled to the proceeds, either by contract or equitable lien.

■■ Furthermore, if a buyer under a purchase money security agreement is obligated to insure the seller's interest, the seller is entitled to the insurance proceeds, despite the claims of the buyer's creditors, and even if the buyer is named as the sole loss payee. 5A Appleman, Insurance Law & Practice §3341, at 176 (1970).

■■ In this case, plaintiffs argue that Ford Credit, as assignee under the installment contract, is bound by Williams's actions. The problem with this contention is that it misconceives the nature of the assignment: Ford Credit is the assignee of the seller, not the buyer, and it has all the contract rights of the seller. Thus, the buyer did not have the power to assign or compromise the contract rights of the seller's assignee.

■■ Plaintiffs also argue that Ford Credit had the option of taking the insurance proceeds as payment of Williams's debt only if the car was completely destroyed. The relevant portion of the contract provides that, "the proceeds from such insurance, by whomever obtained, shall be applied toward *replacement of the Property* or payment of the indebtedness hereunder in the sole discretion of Seller." (Emphasis added.) The contention is that this provision implies that the vehicle must be completely destroyed before Ford Credit has the option of taking the proceeds in satisfaction of the debt. We reject this argument, because the insurance provisions of the sale contract, considered in their entirety, clearly give the seller sole discretion to retain the insurance proceeds, in satisfaction of the debt, whenever the seller believes that the repaired or rebuilt vehicle would not be adequate security for the debt. Furthermore, the record shows that plaintiffs supplied 32 replacement parts for the damaged vehicle, and that they only repaired 6 parts. We can only conclude that the work performed by plaintiffs involved "replacement of the property" and that, therefore, Ford Credit had sole discretion to retain the insurance proceeds.

Plaintiffs do not claim that they had a contract with Ford Credit concerning the insurance. And, there is no claim that Ford Credit did anything to induce plaintiffs to complete the repairs in reliance upon an expectation of being paid with the insurance money. In fact, there is nothing in the record which shows that Ford Credit even knew of the damage to the vehicle until plaintiffs demanded endorsement of the insurance draft.

■■ Since the draft could only be negotiated or enforced by all the payees

(Ill. Rev. Stat. 1979, ch. 26, par. 3—116), plaintiffs were on notice that Ford Credit had a claim to the proceeds. Despite this notice, plaintiffs released the car to Williams in exchange for the draft, and some kind of promise from her that she would have Ford Credit add its endorsement. But, of course, Williams had no authority to assign or encumber proceeds which belonged to Ford Credit.

■■ Plaintiffs emphasize the allegation that Peerless Insurance authorized or ordered the work on the car. But, because Peerless was dismissed as a defendant, by agreement and with prejudice, this allegation is irrelevant to resolution of the issue presented: Ford Credit's contractual right to the proceeds.

We admit that plaintiff's plea for payment is emotionally compelling, but we are forced to conclude that plaintiffs have no right to the insurance proceeds.

For the preceding reasons the judgment of the circuit court is reversed and the cause is remanded with instructions to enter judgment for Ford Credit on its counterclaim.

Reversed and remanded with directions.

SULLIVAN, P. J., and MEJDA, J., concur.