# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Parkway Bank & Trust Co. v. State Farm Fire & Casualty Co.**, 2013 IL App (1st) 122387

---

| | |
|---|---|
| Appellate Court Caption | PARKWAY BANK AND TRUST COMPANY, an Illinois Banking Corporation, Plaintiff-Appellant, v. STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Corporation, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-2387 |
| Filed | May 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to recover the proceeds of an insurance policy issued by defendant following a fire that damaged an apartment building, the entry of summary judgment for defendant and against plaintiff mortgagee was affirmed, since the record showed that checks for the insurance proceeds were paid to the company retained by the insured owner to repair the building pursuant to an endorsement from plaintiff bank forged by an agent of the company, and plaintiff's remedy was to sue the bank that paid the checks over the forged endorsement for conversion pursuant to section 3-420 of the Uniform Commercial Code. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-18043; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Carey Filter White & Boland, of Chicago (Edmund P. Boland and Emily A. Ralph, of counsel), for appellant.

Sudekum Cassidy & Shulruff, Chtrd. (Frederick J. Sudekum III and Florence M. Schumacher, of counsel), of Chicago, for appellee.

Panel

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Presiding Justice Hoffman and Justice Cunningham concurred in the judgment and opinion.

## OPINION

¶ 1 Plaintiff, Parkway Bank and Trust Company, filed a declaratory judgment action alleging that defendant, State Farm Fire and Casualty Company, had refused to tender to plaintiff insurance policy proceeds in the amount of $252,830.94 in connection with a fire loss on certain real property on which plaintiff held a mortgage and was named as a "mortgagee" under the policy. Plaintiff sought a declaration of its entitlement to the insurance proceeds. Defendant filed an answer and affirmative defense stating it had already issued two checks totaling $252,830.94 naming plaintiff as a co-payee, and that plaintiff's failure to receive said funds resulted from the tortious or fraudulent acts of a third party. Defendant argued that since it had fully performed all of its obligations under the policy, it should not be required to "duplicatively pay" plaintiff additional insurance proceeds. The circuit court granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment. Plaintiff appeals. We affirm.

¶ 2 Plaintiff is the owner and holder of a promissory note executed by Nelson and Martha Soto (the Sotos), and delivered to plaintiff on July 14, 2005, in consideration for the extension of credit to the Sotos in the amount of $363,750. The note is secured by a mortgage on the Sotos' apartment building located at 3037 W. Belmont Avenue in Chicago. Defendant issued an insurance policy for the apartment building, identifying the Sotos as the named insureds, and plaintiff as a mortgagee. The policy provided coverage for, among other things, accidental direct physical loss to the apartment building. The policy includes the following loss payment provisions applicable to the Sotos as named insureds (*i.e.*, "you"):

"Loss Payment. In the event of loss covered by this policy:

a. we will give notice, within 30 days after we receive the sworn statement of loss, of our intent to settle the loss according to one of the following methods:

(1) pay the value of lost or damaged property as determined in Condition 2. Valuation;

-2-

(2) pay the cost of replacing or repairing the lost or damaged property, plus any reduction in value of repaired items;

(3) take all or any part of the property at an agreed or appraised value; or

(4) repair, rebuild or replace the property with other property of like kind and quality;

b. we will not pay you more than your financial interest in the covered property;

c. we may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the covered property;

d. we may elect to defend you, at our expense, against suits arising from claims of owners of property;

e. we will pay for covered loss within 60 days after we receive the sworn statement of loss, if:

(1) you have complied with all of the terms of this policy; and

(2) we have reached agreement with you on the amount of loss or an appraisal award has been made."

¶ 3    The duties and obligations between defendant and plaintiff are found in the policy's "Mortgage Holders" provision, which states:

"10. Mortgage Holders. When used in the following provisions of this condition, the term 'mortgage holder' includes mortgagee or trustee:

a. We will pay for covered loss to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interest may appear.

b. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

(1) pays any premium due under this policy at our request if you have failed to do so;

(2) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

(3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All terms of this policy will then apply directly to the mortgage holder."

¶ 4    A fire damaged the Sotos' apartment building on November 6, 2009. After the fire, the Sotos entered into a written "Repair Agreement" with Brickman Companies LLC (Brickman) to repair the apartment building. Pursuant to the repair agreement, the Sotos assigned Brickman their rights to receive payment under the policy. Specifically, the repair agreement stated:

-3-

"I [the Sotos] authorize (Brickman Companies LLC) (contractor) the ability to receive, from the above named insurance company [defendant], such proceeds as are relative to the above referenced loss.

If direct payments to (Brickman Companies LLC) not be possible [*sic*], the undersigned hereby authorizes and directs the above named insurance company to name (Brickman Companies LLC) as an additional payee on the settlement draft relative to the above named loss."

¶ 5    Defendant issued two checks totaling $252,830.94 for the fire damage to the apartment building. The first check was in the amount of $75,000. The second check was in the amount of $177,830.94. Both checks were made payable to "NELSON SOTO & MARTHA I. SOTO & PARKWAY BANK & TRUST COMPANY ITS SUCCESSORS AND/OR ASSIGNS & BRICKMAN CONSTRUCTION INC." and were delivered to Brickman pursuant to the Sotos' instructions to defendant.

¶ 6    Approximately two months after defendant mailed the checks to Brickman pursuant to the Sotos' instructions, defendant learned that a representative of Brickman had forged plaintiff's endorsement on the checks and that JP Morgan Chase Bank NA (Chase Bank) had paid the funds to Brickman over the forged endorsement. Plaintiff then made a written demand that defendant immediately pay plaintiff a sum representing the total of the two checks, $252,830.04, arguing that "[u]nder the terms of Mr. Soto's loan with [plaintiff], 100% of the proceeds of all insurance claims, including these 2 checks, must be paid to [plaintiff]." Once payment was made, plaintiff stated it would "then determine the appropriate application of said funds in compliance with the terms outlined in Mr. Soto's loan documents." Defendant declined to pay the claim a second time, and plaintiff then filed a complaint for declaratory judgment, alleging it was entitled to relief in the amount of $252,830.94 pursuant to the insurance policy, plus interest due to defendant's "vexatious" refusal to pay. Defendant denied owing any more monies to plaintiff, and raised as an affirmative defense that plaintiff's failure to receive the insurance proceeds was the result of the tortious and fraudulent act of a third party for which defendant should not be held liable. The parties filed cross-motions for summary judgment, and on July 9, 2012, the circuit court granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment. Plaintiff appeals.

¶ 7    Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Auto-Owners Insurance Co. v. Yocum*, 2013 IL App (2d) 111267, ¶ 17. By filing cross-motions for summary judgment, the parties agree that only a question of law is involved and invite the court to decide the issues based on the record. *Id*. Review is *de novo*. *Id*.

¶ 8    Initially, we note plaintiff argues it was a named insured under the policy, and that defendant breached the loss payment provision of the policy by failing to notify plaintiff that defendant was issuing checks to Brickman. "An insurance policy is a contract between an insurer and an insured [citation], and the rights and obligations of an insurer are primarily

determined by the terms of that contract [citation]." *Country Mutual Insurance Co. v. Teachers Insurance Co*., 195 Ill. 2d 322, 328 (2001). Review of the insurance policy reveals that the Sotos are identified as the named insureds, whereas plaintiff is separately identified as a mortgagee. The loss payment provision of the policy expressly applies only to the named insureds under the policy and, as such, the notification provision therein applies only to the Sotos and not to plaintiff.

¶ 9        Both parties agree that as a mortgagee under the policy, plaintiff was entitled to receive loss payment in this case from defendant. The issue is whether defendant satisfied its obligation to plaintiff by issuing two checks naming plaintiff as a joint co-payee with the Sotos and Brickman, or whether defendant's obligation to plaintiff remains unsatisfied because an agent of Brickman forged plaintiff's endorsement and cashed the checks at Chase Bank.

¶ 10       The Uniform Commercial Code (the UCC) (810 ILCS 5/3-101 *et seq.* (West 2010)) governs the outcome of this case. Under section 3-310(b)(1) of the UCC (810 ILCS 5/3-310(b)(1) (West 2010))[1], where a drawer writes an uncertified check for an obligation which is taken by the obligee, the obligation is suspended until the check is paid or until the check is dishonored. Once the check is paid, the obligation is discharged to the extent of the amount of the check. 810 ILCS 5/3-310(b)(1) (West 2010). Under section 3-602(a) (810 ILCS 5/3-602(a) (West 2010)), a check is considered paid to the extent payment is made by or on behalf of a party obliged to pay the check, *and to a person entitled to enforce the check*. Under section 3-110(d) (810 ILCS 5/3-110(d) (West 2010)), where a check is made payable jointly to two or more persons, the check may only be enforced by all of them; a joint payee acting alone is not entitled to enforce the check. If a payor bank pays a person not entitled to enforce the check, such as a joint payee who has stolen the check from his co-payee and forged the co-payee's signature, the suspension of the underlying obligation continues because the check is not considered properly "paid" under section 3-602(a). See 810 ILCS Ann. 5/3-310, Uniform Commercial Code Comment 4, at 180-81 (Smith-Hurd 1993). In such a case, the co-payee may sue the payor bank for conversion under section 3-420 (810 ILCS 5/3-420 (West 2010)) or sue the drawer under section 3-309 (810 ILCS 5/3-309 (West 2010)) for enforcement of a lost, destroyed, or stolen instrument; however, he "cannot merely ignore the instrument and sue the drawer on the underlying contract." 810 ILCS Ann. 5/3-310, Uniform Commercial Code Comment 4, at 181 (Smith-Hurd 1993).

¶ 11       In the present case, defendant is the drawer, Chase Bank is the payor bank, and the Sotos, plaintiff, and Brickman are the joint payees who are collectively (*not* individually) entitled to enforce the $252,830.94 checks written to them by defendant. Brickman cashed the checks

---

[1]Although defendant failed to raise the applicability of section 3-310 before the circuit court, we may properly consider section 3-310's applicability as it provides a basis for affirming the circuit court's order granting summary judgment for defendant. See *Fleming v. Moswin*, 2012 IL App (1st) 103475-B, ¶ 44 (holding that an appellee may raise an issue on review that was not presented to the circuit court in order to sustain the judgment, where the factual basis for the issue was before the circuit court, and also holding that a reviewing court may affirm on any basis in the record regardless of the circuit court's reasoning).

at Chase Bank. However, neither party disputes that Brickman was not entitled to enforce said checks because one of Brickman's agents forged plaintiff's endorsement. Accordingly, as Brickman was not entitled to enforce the $252,830.94 checks over plaintiff's forged endorsement, said checks are not considered "paid" under section 3-602(a), and therefore the suspension of defendant's underlying obligation to pay plaintiff continues under section 3-310(b)(1). Plaintiff's only possible recourse is to sue Chase Bank for conversion of the checks under section 3-420, or to sue defendant for enforcement of the checks under section 3-309 if it can show the checks were lost, destroyed, or stolen; plaintiff may not sue defendant on the underlying contract, *i.e.*, the insurance policy. 810 ILCS Ann. 5/3-310, Uniform Commercial Code Comment 4, at 181 (Smith-Hurd 1993). Plaintiff's declaratory judgment action improperly seeks to recover from defendant on the underlying contract, the insurance policy, and accordingly the circuit court correctly granted summary judgment thereon in favor of defendant.

¶ 12    Instead of bringing suit against defendant on the insurance policy, plaintiff's recourse for its failure to receive the insurance proceeds is to pursue the remedies provided for in section 3-310 and comment 4 thereon. Defendant argues that although comment 4 to section 3-310 provides two possible remedies for plaintiff, *i.e.*, to sue defendant for enforcement of the checks under section 3-309 or to sue Chase Bank for conversion under section 3-420, the remedy afforded under section 3-309 is not applicable on the facts of this case. Specifically, defendant argues plaintiff cannot file suit against it under section 3-309, as section 3-309 provides for the enforcement of lost, destroyed, or stolen instruments, and the check instruments at issue here were not lost, destroyed or stolen; therefore, defendant contends plaintiff's only remedy is against Chase for conversion pursuant to section 3-420. We agree. Section 3-309 specifically provides:

"§ 3-309. Enforcement of lost, destroyed, or stolen instrument.

(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) *the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process*." (Emphasis added.) 810 ILCS 5/3-309 (West 2010).

¶ 13    The present case does not involve a situation where the check instruments were destroyed, their whereabouts cannot be determined, or they are in the wrongful possession of an unknown person or a person who cannot be found or is not amenable to service of process, as required under section 3-309. Rather, the check instruments in question were not lost or destroyed–they were cashed by Brickman; in fact, copies of the checks are contained in the record on appeal. In addition, there has been no showing that Brickman cannot be found or is not amenable to service of process. Therefore, plaintiff has not shown it is entitled to maintain an action against defendant under section 3-309 for enforcement of lost, destroyed, or stolen instruments, and plaintiff has not directed us to another provision in article 3 of the UCC that permits a payee to sue a drawer of a check; its only remedy,

therefore, is against Chase Bank for conversion under section 3-420.

¶ 14    Plaintiff argues it should be allowed to sue defendant on the underlying contract (the insurance policy), as opposed to suing Chase Bank for conversion under section 3-420 of the UCC, and cites several cases in support thereof. See *Koscher v. Chicago City Bank & Trust Co.*, 280 Ill. App. 500 (1935); *Miyata v. Peerless Insurance Co.*, 95 Ill. App. 3d 584 (1981); *Standard Federal Savings & Loan Ass'n of Chicago v. Rocco*, 154 Ill. App. 3d 587 (1987). None of those cases are dispositive, as they predate the passage of section 3-310 of the UCC[2], which is controlling here and provides that under the facts of this case defendant's obligation to plaintiff is suspended and that plaintiff's appropriate means of recovery is to sue Chase Bank for conversion under section 3-420 of the UCC.

¶ 15    Plaintiff argues a factual issue should have precluded defendant from obtaining summary judgment. Specifically, plaintiff argues defendant's motion for summary judgment should have been denied because Brickman was referred to as Brickman Companies, LLC, a limited liability company, in some parts of the record, however the checks issued by defendant reference Brickman Construction, Inc., an Illinois corporation.

¶ 16    As discussed earlier in this opinion, by filing cross-motions for summary judgment, the parties agreed that only a question of law was involved and invited the circuit court to decide the issues based on the record. *Yocum*, 2013 IL App (2d) 111267, ¶ 17. Regardless, for a factual dispute to have the effect of rendering summary judgment inappropriate, the disputed fact must be material. See 735 ILCS 5/2-1005(c) (West 2010); see also *Schultz v. American National Bank & Trust Co.*, 40 Ill. App. 3d 800, 805 (1976) ("The factual issues which are disputed must be material to the essential elements of the cause of action or defense and those which are unrelated, regardless of how sharply controverted, do not warrant the denial of summary judgment if otherwise proper."). In the present case, plaintiff has failed to show how the alleged factual issue regarding the proper designation of Brickman as either a limited liability company or a corporation is material to the cause of action or the issues on appeal.

¶ 17    Plaintiff argues it is entitled to prejudgment interest. As a result of our disposition of this case, affirming the grant of summary judgment in favor of defendant, we need not address this argument.

¶ 18    In its reply brief, plaintiff argues we should strike defendant's appellee's brief because it argues certain facts outside the appellate record. We decline to strike the brief, but we have considered only those facts supported by the appellate record.

¶ 19    For the foregoing reasons, we affirm the circuit court.

¶ 20    Affirmed.

---

[2]Plaintiff argues in its reply brief that section 3-310 of the UCC was in effect in 1987, but our review indicates that section 3-310 was not in effect until January 1, 1992. See Pub. Act 87-582, § 1 (eff. Jan. 1, 1992).