2016 IL App (1st) 152685

FIRST DIVISION
June 30, 2016

No. 1-15-2685

| | | |
|---|---|---|
| AFFILIATED HEALTH GROUP, LTD., | ) | Appeal from the |
| AMERICAN HEALTH CENTER, LTD., | ) | Circuit Court of |
| DIMENSIONS MEDICAL CENTER, LTD., | ) | Cook County. |
| ACCESS HEALTH CENTER LTD., | ) | |
| ACU HEALTH CENTER, LTD., ADVANTAGE | ) | |
| HEALTH CARE, LTD., AANCHOR HEALTH | ) | |
| CENTER, LTD., FORESTVIEW MEDICAL | ) | |
| CENTER, LTD., MICHIGAN AVENUE CENTER | ) | |
| FOR HEALTH, LTD., ACE HEALTH CENTER, | ) | |
| LTD., CENTER FOR FAMILY HEALTH CARE, | ) | |
| SC, VIJAY L. GOYAL, M.D., and VINOD K. | ) | |
| GOYAL, M.D., | ) | |
| | ) | |
|     Plaintiffs-Appellants, | ) | |
| | ) | |
|     v. | ) | No. 13 L 11485 |
| | ) | |
| DEVON BANK, TCF BANK, HEALTHCARE | ) | |
| SERVICES CORP. d/b/a BLUE CROSS BLUE | ) | |
| SHIELD OF ILLINOIS, UNITED HEALTHCARE | ) | |
| SERVICES, INC., AETNA, INC., IRINA | ) | |
| NAKHSHIN, INNA KOGANSHATS and | ) | |
| BORIS KOGANSHATS, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |
| (Healthcare Services Corp. d/b/a Blue Cross Blue | ) | |
| Shield of Illinois, United Healthcare Services, Inc., | ) | |
| and Aetna, Inc., | ) | Honorable |
| | ) | Raymond W. Mitchell, |
|     Defendants-Appellees). | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Connors concurred in judgment and opinion.

## OPINION

¶ 1      Plaintiffs-appellants are two doctors, Vijay L. Goyal M.D. and Vinod K. Goyal, M.D.,

along with the organizations they control, who provide medical services in Chicago and the

surrounding area. They allege that beginning in the early 1990s two of their employees from their billing department began to embezzle funds from them. They further allege that this embezzlement only ended in 2013 after millions of dollars had been taken. Plaintiffs-appellants allege that the two employees created sham entities with similar names to their own organizations and then opened accounts for these sham entities at Devon Bank and TCF Bank. Defendants-appellees are health insurance companies whose insureds received medical services from plaintiffs-appellants. Defendants-appellees issued checks for the services provided, but it is alleged many of those checks were ultimately embezzled.

¶ 2    Upon learning of the embezzlement plaintiffs-appellants brought suit against the embezzlers, the two banks used by them, and the insurance companies who paid for medical services. In their complaint, plaintiffs-appellants alleged they were entitled to recover from insurance companies under section 3-414 of Illinois's version of the Uniform Commercial Code. Defendants-appellees brought a motion to dismiss under section 2-615 of the Illinois Code of Civil Procedure alleging that plaintiffs-appellants were not entitled to recover against them under section 3-414. After briefing the motion, the circuit court agreed and dismissed defendants-appellees with prejudice.

¶ 3    Plaintiffs-appellants raise only one issue on appeal: whether the circuit court erred in finding that the defendants-appellees' obligations to them were discharged. For the following reasons we affirm the order of the circuit court dismissing defendants-appellees. There are no set of facts which plaintiffs-appellants can allege that would entitle them to recover against defendants-appellees under the state of Illinois's Uniform Commercial Code.

¶ 4                                    JURISDICTION

¶ 5    A final and appealable order was entered on September 14, 2015. Plaintiffs-appellees timely filed their notice of appeal on September 21, 2015. Accordingly, this court has

jurisdiction over this matter pursuant to article VI, section 6 of the Illinois Constitution, and Illinois Supreme Court Rules 301 and 303. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 6                                    BACKGROUND

¶ 7     While the facts of this case span the course of 20 years, the events at issue are straight forward. Plaintiffs-appellants are two physicians, Vijay Goyal, M.D. and Vinod Goyal, M.D., and their various medical practices (hereinafter collectively Affiliated). Defendants-appellees, Aetna, Inc., United HealthCare Services, Inc., and Health Care Services Corp. d/b/a Blue Cross and Blue Shield of Illinois (hereinafter collectively Insurers) are health insurance companies whose insureds received treatment from and were billed for services by Affiliated. Affiliated alleges that the Insurers issued and delivered checks payable to Affiliated for medical services provided to the insureds. The other defendants included Devon Bank, TCF Bank, and those who allegedly embezzled funds from Affiliated. Of the defendants, only the Insurers are a party to this appeal.

¶ 8     Affiliated alleges in its complaint that it employed Irina Nakhshin (Nakhshin) from approximately 1992 to 2013 as a manager in its billing department and Inna Koganshats (Koganshats) "at some point in time." Nakhshin's job "included 'posting' or documenting medical insurance payments into the computer software program at Affiliated's offices." In the early 1990s, Nakhshin and Koganshats created several entities with names similar to those of the Affiliated entities and established bank accounts for these sham entities at Devon Bank and TCF Bank. For example, compare Affiliated Health Group, Ltd., American Health Center, Ltd., and Dimensions Medical Center, Ltd. (Affiliated entities) with Affiliated Health Group Billing Inc., American Health Center for Billing, Inc. and Dimensions Medical Management Group (sham entities).

¶ 9     The complaint alleges that from 1992 to 2013, health insurers issued checks for services rendered by Affiliated to its patients who were the health insurers' insureds. While these checks were made payable to specific Affiliated entities, many were deposited by Nakhshin and Koganshats into the bank accounts for the sham entities at Devon and TCF. Once the checks were cleared by the health insurers' banks, the embezzlers would transfer the funds to their personal accounts.

¶ 10     Affiliated alleges the Insurers are among the health insurers who issued the checks from 1992 to 2013 that were deposited into Devon and TCF accounts and ultimately paid by the Insurers' banks. Although the Insurers issued and delivered the checks to the correct entities and these checks were subsequently deposited into Devon and TCF bank and cleared by the Insurers' banks, Affiliated contends that the Insurers remain liable under article 3 of Illinois's version of the Uniform Commercial Code (UCC). Affiliated's complaint alleges claims against the Insurers for violations of section 3-414, which sets forth the obligations of drawers such as the Insurers. 810 ILCS 5/3-414 (West 2014).

¶ 11     On August 13, 2014, the circuit court dismissed all claims against Insurers Aetna and Blue Cross/Blue Shield with prejudice. In dismissing these two insurers, the circuit court found Affiliated's theory of liability was "not logical and inconsistent with the UCC and existing precedent." In this same order, the circuit court dismissed all claims against TCF based on the applicable statute of limitations and limited the cause of action against Devon to those checks cashed between 2010 and 2013. Relying on this order, United Healthcare filed its own motion to dismiss, which the circuit court granted on January 6, 2015. Affiliated's motion to reconsider the dismissal of the Insurers had been denied on December 11, 2014. On May 26, 2015, the circuit court approved a settlement between Affiliated and Devon Bank.

¶ 12    On September 14, 2015, the court entered a final order and the interlocutory dismissals of the Insurers became appealable.  On September 21, 2015, Affiliated filed its notice of appeal seeking a reversal of orders dismissing the Insurers.

¶ 13                                    ANALYSIS

¶ 14    Before turning to the merits of Affiliated's argument, in an order dated May 6, 2016, we found Affiliated's statement of facts failed to comply with Rule 341, but declined to strike it. Illinois Supreme Court Rule 341(h)(6) requires that a statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to pages of the record on appeal."  Ill. S. Ct. R. 341(h)(6) (eff. Jan. 1, 2016).  Affiliated's statement of facts contains improper comments and arguments along with no citations to the record.

¶ 15    While the rules of appellate procedure are not merely suggestions (*Chicago Title & Trust Co. v. Weiss*, 238 Ill. App. 3d 921, 928 (1992)), striking a brief is appropriate only when the violations of the rules hinder our review (*Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 15).  Because the violations are not so flagrant that we are unable to review the appeal, we have not struck the brief, but we will disregard any inappropriate statements. See *Spangenberg v. Verner*, 321 Ill. App. 3d 429, 432 (2001) (declining to strike brief where, although it deviated from the supreme court rules in some ways, the brief complied with the rules in other ways and none of the violations were so flagrant as to hinder or preclude review). Accordingly, those comments and arguments contained in the statement of facts section were not considered in this appeal.

¶ 16    All of the claims in Affiliated's complaint against the Insurers were for violations of section 3-414 of the UCC.  In its allegations against the Insurers, Affiliated alleges that because the checks were stolen by Nakhsin and Koganshats, Affiliated remains unpaid and the Insurers

remain liable. Accordingly, pursuant to section 3-414, Affiliated demanded the Insurers pay for each check that remained unpaid. All of the Insurers brought their respective motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure.

¶ 17 A motion to dismiss brought pursuant to section 2-615 of the Code attacks the legal sufficiency of the complaint. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003). The motion does not raise affirmative factual defenses, but rather alleges defects apparent on the face of the complaint. *Id.* Illinois is a fact pleading jurisdiction. *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 451(2004). Under section 2-615, the only question presented "is whether sufficient facts are contained in the pleadings which, if proved, would entitle plaintiff to relief." *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 471(1991).

¶ 18 When ruling on a motion to dismiss pursuant to section 2-615, "only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered." *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010). All well-pleaded facts in the complaint are accepted as true as well as all reasonable inferences drawn from those well-pleaded facts. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 9 (1992). The allegations in the complaint are to be construed in the light most favorable to plaintiff. *Id.* A plaintiff is not required to set forth evidence in the complaint. *Chandler*, 207 Ill. 2d at 348. A plaintiff, however, cannot simply allege conclusions when opposing a motion to dismiss. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408 (1996). A cause of action should be dismissed "if it is clearly apparent that no set of facts can be proven which will entitle the plaintiff to recovery." *Chandler*, 207 Ill. 2d at 349. Review of a motion to dismiss pursuant to section 2-615 is *de novo*. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997).

¶ 19 On appeal, Insurers argue the circuit court order should be affirmed because section 3-414 extinguished their obligation to pay when the drafts (i.e. the checks) were accepted at the

depositing banks (TCF and Devon).  Section 3-414(c) is titled obligation of the drawer and states in relevant part, "[i]f a draft is accepted by a bank, the drawer is discharged, regardless of when or by whom acceptance was obtained." 810 ILCS 5/3-414(c) (West 2014).  Based on this, whether or not the Insurers were discharged is based on whether the draft was "accepted" regardless "*of when or be whom acceptance was obtained*." *Id.* (added emphasis).

¶ 20    In its brief, Affiliated states "[t]he UCC clearly states that 'acceptance' may only occur when 'a person entitled to enforce the instrument,' such as the legitimate payees in the case sub judice, indorses a check and a bank 'accepts' the validly indorsed check for payment."  However, Affiliated provides no citation to support this definition and it is not the definition provided by the UCC.

¶ 21    Section 3-409(a) states that " '[a]cceptance' means the drawee's signed agreement to pay a draft as presented.  *** Acceptance may be made at any time and becomes effective when notification pursuant to instructions is given or the accepted draft is delivered for the purpose of giving rights on the acceptance to any person."  810 ILCS 5/3-409(a) (West 2014).  The UCC defines a drawee as "a person ordered in a draft to make payment."  810 ILCS 5/3-103(a)(2) (West 2014).  The drawees in this case are the Insurers' banks who issued the checks not the Insurers themselves.  Based on above, we agree with the Insurers that because the drafts were accepted by the banks, the Insurers' obligation to pay for the medical services performed by Affiliated was discharged pursuant to section 3-414(c).

¶ 22    In an attempt to save their argument, Affiliated states that "Section 3-310(b)(4) and accompanying comment 4 directs them to sue the Insurers under Section 3-309[1] because the Insurers obligations were suspended rather than discharged and this is triggered by dishonor due

---

[1] Affiliated's brief incorrectly states this as section 3-409.

to the check being unpaid to the proper legitimate payee under 3-414(b)."  Affiliated's argument therefore rests on the proposition that the checks at issue were dishonored.

¶ 23    Dishonor of an accepted draft is governed by section 3-502(d)(1) and states, "[i]f the draft is payable on demand, the draft is dishonored if presentment for payment is duly made to the acceptor and the draft is not paid on the day on presentment."[2]  810 ILCS 5/3-502(d)(1) (West 2014).  Section 3-103(a)(1) states that an acceptor "means a drawee who has accepted a draft." 810 ILCS 5/3-502(d)(1) (West 2014).  In this case the drawees, the Insurers' banks, accepted the drafts from the payor-banks who had paid out on them.  Accordingly, the drafts were never dishonored and section 3-414(b) is not triggered.

¶ 24    Furthermore, section 3-310(b)(4) offers Affiliated no relief.  Section 3-310(b) states, "[u]nless otherwise agreed and except as provided in subsection (a), if a note or uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply."  810 ILCS 5/3-310(b) (West 2014).  Subsection (b)(1) states, "[i]n the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified.  Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check."  *Id.* at (b)(1).  As has already been discussed, the checks were never dishonored and were ultimately paid by the drawee banks, thus discharging the Insurers' obligations.

¶ 25    Moreover, under section (b)(4) relief is only available to an obligee like Affiliated if the obligee is "the person entitled to enforce the instrument but no longer in possession of it because it was lost, stolen, or destroyed."  810 ILCS 5/3-310(b)(4).  Comment 4 for section 3-310(b)(4)

---

[2] The Insurers' brief cites to section 3-502(b), but this section deals with unaccepted drafts, and here we have accepted drafts, however, this does not change the analysis.

notes that in this situation "the payee's [Affiliated] cause of action is against the depository bank or payor bank in conversion under Section 3-420 or against the drawer under Section 3-309." *Id.* at (b)(4), UCC Comment 4. Thus, UCC Comment 4 indicates a limitation for a party to either sue the depository bank or the payor bank in conversion or the drawer for enforcement of the instrument. Here, Affiliated sued both payor banks, TCF and Devon, and the drawers, the Insurers, and ultimately settled with Devon. Because section 3-310(b)(4) contemplates but one recovery from either the payor bank or the drawer, and Affiliated has recovered from payor-Devon, it cannot seek recovery against the Insurers as drawers pursuant to section 3-309.

¶ 26 However, even if Affiliated had not recovered against the payor banks, they would still not be able to recover against the Insurers under section 3-309. In order to enforce an instrument that the person does not possess, section 3-309 requires that the "person not in possession of [the] instrument" establish:

> (i) the person was in possession of the instrument and entitled to enforce it when the loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

810 ILCS 5/3-309(a) (West 2014). Affiliated cannot satisfy the third requirement of section 3-309(a) because the instrument has not been destroyed. Affiliated argues that the instruments have been "destroyed" through negotiation, however, like its definition of acceptance, Affiliated provides no citation for this definition. The Insurers cite to *Parkway Bank & Trust Co. v. State Farm Fire and Casualty Company*, 2013 IL App (1st) 122387, for the proposition that a check is not destroyed within the meaning of section 3-309 if it is cashed. In denying plaintiff recovery under section 3-309 against the defendant-insurance company, the *Parkway* court stated, "the check instruments in question were not lost or destroyed – they were cashed by [the forger]."

*Parkway Bank & Trust Co.*, 2013 IL App (1st) 122387, ¶ 13. Like the instruments at issue in *Parkway*, the instruments here were cashed at a bank and were not destroyed. We agree with the *Parkway* court that an instrument that is cashed at a bank is not destroyed. Accordingly, Affiliated cannot allege the elements necessary to be able to recover under section 3-309.

¶ 27 The rest of Affiliated's brief contains arguments in support of issues that are not properly before this court. As has been previously stated, Affiliated's notice of appeal sought "reversal finding all insurers' obligations under negotiable instruments not to be extinguished." In an order dated March 18, 2016, we dismissed for lack of jurisdiction review of any claim related to defendant TCF Bank. Furthermore, it has long been established that "a notice of appeal confers jurisdiction on a court of review to consider only the judgments or part thereof specified in the notice of appeal." *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979). Furthermore, "[t]he scope of appellate jurisdiction is fixed by the notice of appeal and by later proper amendment thereto." *Conley v. Peoples Gas, Light & Coke Co.*, 82 Ill. App. 3d 1094, 1101 (1980). Because sections V – XII of Affiliated's brief contains arguments related to issues that are not properly before this court, we will not consider them on appeal.

¶ 28                                             CONCLUSION

¶ 29 Based on the foregoing, there are no set of facts which Affiliated can allege that would entitle it to recovery against the Insurers. Accordingly, we affirm the order of the circuit court dismissing Healthcare Services Corp., United Healthcare Services, Inc., and Aetna, Inc. pursuant to section 2-615.

¶ 30 Affirmed.