In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-2203
THIRTEEN INVESTMENT COMPANY, INC.,
 Plaintiff-Appellant,
 v.

FOREMOST INSURANCE COMPANY
GRAND RAPIDS MICHIGAN,
 Defendant-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Illinois, Eastern Division.
 No. 1:19-cv-04630 — Harry D. Leinenweber, Judge.
 ____________________

 ARGUED APRIL 5, 2023 — DECIDED MAY 2, 2023
 ____________________

 Before SYKES, Chief Judge, and HAMILTON and BRENNAN,
Circuit Judges.
 BRENNAN, Circuit Judge. Thirteen Investment Company,
Inc. sued Foremost Insurance Company to pay for a ﬁre loss
covered under an insurance policy. But Foremost had already
delivered the settlement checks to Thirteen’s public insurance
adjuster, Paramount Restoration Group, Inc., which unilater-
ally endorsed the checks and kept the proceeds. Under Illinois
2 No. 22-2203

law, this satisﬁed Foremost’s policy obligations. So, we aﬃrm
the district court’s grant of summary judgment for Foremost.
 I.
 Thirteen’s building suﬀered ﬁre damages covered by
Foremost’s policy. Thirteen then retained Paramount as its
public adjuster and general contractor for repairs. Under their
agreement, Thirteen hired Paramount “to be [Thirteen’s]
agent and representative to assist in the preparation, presen-
tation, negotiation, adjustment, and settlement” of the ﬁre
loss. Thirteen also “direct[ed] any insurance companies to in-
clude Paramount … on all payments on” the ﬁre loss claim.
Paramount negotiated the ﬁre loss, and Foremost delivered
two settlement checks to Paramount. The checks named Thir-
teen, its mortgagee,1 and Paramount as co-payees. Paramount
then endorsed the names of all co-payees, cashed the checks,
and kept the proceeds. Paramount performed some repair
work on the building before Thirteen ﬁred it as general con-
tractor.
 Thirteen sued Foremost in state court, seeking a declara-
tory judgment that the insurer had breached its policy by not
paying the claim. Foremost removed this case to federal court
and denied this allegation. The district court granted sum-
mary judgment for Foremost because when Paramount re-
ceived and cashed the checks, that discharged the insurer’s
performance obligation under the policy. Thirteen timely ap-
peals.

 1 Thirteen’s mortgagee, BSI Financial Services, was named a co-payee
on the $150,601.33 check for the building but not the $5,288.50 check for
building contents.
No. 22-2203 3

 II.
 Thirteen oﬀers three reasons for reversal. First, it contends
that Foremost waived payment as an aﬃrmative defense by
failing to plead it in its answer. Second, Thirteen argues that,
under controlling Illinois law, Foremost’s policy obligation
for the loss was not discharged when it delivered the checks
to Paramount, which cashed the checks. Third, Thirteen al-
leges that Foremost agreed to make claim payments to Thir-
teen in installments after Foremost had inspected repair work
performed.
 A.
 Framing payment here as an aﬃrmative defense, Thirteen
argues that Foremost’s answer failed to include the defense,
so it is waived. Indeed, payment is a listed aﬃrmative defense
in Federal Rule of Civil Procedure 8(c), which requires a party
to state an aﬃrmative defense in a responsive pleading. But
payment is not always an aﬃrmative defense. A defense is
aﬃrmative: (1) “if the defendant bears the burden of proof”
under relevant law or (2) “if it [does] not controvert the plain-
tiﬀ’s proof.” Winforge, Inc. v. Coachmen Indus., Inc., 691 F.3d
856, 872 (7th Cir. 2012) (alteration in original) (quoting Bruns-
wick Leasing Corp. v. Wis. Cent., Ltd., 136 F.3d 521, 530 (7th Cir.
1998)). As plaintiﬀ, Thirteen bears the burden of establishing
non-payment and breach of contract. So, we focus on the sec-
ond approach.
 “An aﬃrmative defense ‘limits or excuses a defendant’s li-
ability even if the plaintiﬀ establishes a prima facie case.’” Bell
v. Taylor, 827 F.3d 699, 704–05 (7th Cir. 2016) (quoting Tober v.
Graco Children’s Prods., Inc., 431 F.3d 572, 579 n.9 (7th Cir.
2005)). “In other words, an aﬃrmative defense is ‘[a]
4 No. 22-2203

defendant’s assertion of facts and arguments that, if true, will
defeat the plaintiﬀ’s ... claim, even if all the allegations in the
complaint are true.’” Id. at 705 (quoting Defense, BLACK’S LAW
DICTIONARY (10th ed. 2014)). Whether Foremost’s payment is
an aﬃrmative defense thus depends on whether it runs con-
trary to Thirteen’s pleadings.
 Thirteen’s complaint states in relevant part:
 21. Foremost has not reached agreement with
 the Plaintiﬀ on the amount of loss and has not
 paid any portion of the claim.
 22. Foremost’s failure to pay is a breach of con-
 tract.
Foremost denied both allegations in its answer. So, payment
here is not an aﬃrmative defense because it is not asserted as
a defense that limits or excuses Foremost’s liability, even if
Thirteen’s pleadings are true. Therefore, Foremost did not
have to plead payment separately in its answer. The denials
of Thirteen’s allegations were suﬃcient to preserve this de-
fense.
 B.
 The merits hinge on a question of Illinois law 2 that has not
yet been addressed by the state’s supreme court: Does a con-
tract obligor’s delivery of a check to a joint co-payee, who then
unilaterally cashes the check, discharge the obligor’s perfor-
mance in the amount of the check? We review the district
court’s grant of summary judgment de novo. Pierner-Lytge v.

 2 Thirteen is a citizen of Illinois, and Foremost is a citizen of Michigan.
The fire loss occurred in Illinois. Diversity jurisdiction exists here under
28 U.S.C. § 1332(a)(1).
No. 22-2203 5

Hobbs, 60 F.4th 1039, 1043 (7th Cir. 2023). When faced with
unresolved issues of state law, we must predict how the rele-
vant highest state court would rule. Sanchelima Int’l, Inc. v.
Walker Stainless Equip. Co., LLC, 920 F.3d 1141, 1145 (7th Cir.
2019). And we can use “decisions of the state’s intermediate
appellate courts for guidance as necessary,” Straits Fin. LLC v.
Ten Sleep Cattle Co., 900 F.3d 359, 369 (7th Cir. 2018), “tak[ing]
into account trends in a state’s intermediate appellate deci-
sions,” Cmty. Bank of Trenton v. Schnuck Markets, Inc., 887 F.3d
803, 811–12 (7th Cir. 2018).
 Paramount was Thirteen’s designated public adjuster, its
agent for claim negotiation, and a joint co-payee. Thirteen, by
agreement, retained Paramount “to be [its] agent and repre-
sentative to assist in the preparation, presentation, negotia-
tion, adjustment, and settlement” of the ﬁre loss. Thirteen
even “direct[ed] any insurance companies to include Para-
mount … on all payments on” the ﬁre loss claim. 3 Id.
Paramount thus acted within the scope of its express, actual
authority when it negotiated, settled, and received the checks
for the claim. See generally Curto v. Illini Manors, Inc., 940
N.E.2d 229, 233 (Ill. App. Ct. 2010).
 Nothing in the policy says the checks were to be sent to
Thirteen. But more importantly, Foremost’s delivery to Para-
mount was, by law, delivery to Thirteen. Kelly v. Parker, 54
N.E. 615, 619 (Ill. 1899) (“A delivery to an agent is a delivery
to the principal … .”). In fact, Illinois law contemplates that a

 3 Illinois law contemplates but does not require that a public adjuster
be named as a co-payee on insurance claim payments. 215 ILL. COMP. STAT.
5/1575(b) (“The contract may specify that the public adjuster shall be
named as a co-payee on an insurer’s payment of a claim.”).
6 No. 22-2203

public adjuster not only negotiates claims but also “receives,
accepts, or holds … funds on behalf of an insured toward the
settlement of a claim for a loss … in a non-interest bearing es-
crow or trust account.” 215 ILL. COMP. STAT. 5/1580. All this is
to say that Paramount received the settlement checks on be-
half of Thirteen.
 What, then, is the legal eﬀect of Paramount unilaterally
cashing the checks? As to the obligation of a drawer and obli-
gor under a contract (here, Foremost), Illinois’s version of the
Uniform Commercial Code says: “If a draft is accepted by a
bank, the drawer is discharged, regardless of when or by
whom acceptance was obtained.” 810 ILL. COMP. STAT. 5/3-
414(c). “‘Acceptance’ means the drawee’s [(here, Foremost’s
bank)] signed agreement to pay a draft as presented.” 810 ILL.
COMP. STAT. 5/3-409(a). Similarly, 810 ILL. COMP. STAT. 5/3-
310(b)(1) says if a check is taken for an obligation, “[p]ayment
or certiﬁcation of the check results in discharge of the obliga-
tion to the extent of the amount of the check.” Paramount was
Thirteen’s agent and joint co-payee, authorized to receive the
checks. So under Illinois’s statutes, Foremost’s performance
obligation regarding the ﬁre loss was discharged when the
checks endorsed by Paramount were accepted by Foremost’s
bank.
 Illinois caselaw on this legal question is sparse, but two
appellate court decisions conﬁrm our reading of Illinois law.
In Aﬃliated Health Group, Ltd. v. Devon Bank, 58 N.E.3d 772,
774–75 (Ill. App. Ct. 2016), plaintiﬀ doctors alleged that their
employees embezzled health insurance checks issued for ser-
vices the doctors provided. Like here, the doctors sued the in-
surers. Id. at 775. The question on appeal was whether the
No. 22-2203 7

defendant insurers’ obligations to the plaintiﬀs were dis-
charged by their employees’ cashing the checks. Id. at 776–77.
 The Illinois appellate court held “that because the drafts
were accepted by the banks, the Insurers’ obligation to pay for
the medical services performed by [the plaintiﬀs] was dis-
charged pursuant to section 3-414(c).” Id. at 777. The court re-
jected the plaintiﬀs’ argument that the checks were eﬀectively
dishonored under 810 ILL. COMP. STAT. 5/3-502(d)(1) because
of embezzlement and held that payment by the drawee banks
discharged the insurers’ obligations. Id. at 777–78. Likewise,
the court rejected a theory of recovery against the insurers un-
der 810 ILL. COMP. STAT. 5/3-309(a) for enforcement of a lost,
destroyed, or stolen instrument. Id. at 778. This was because
the plaintiﬀs could not satisfy the third requirement of § 3-
309(a): “the person cannot reasonably obtain possession of the
instrument because the instrument was destroyed, its where-
abouts cannot be determined, or it is in the wrongful posses-
sion of an unknown person or a person that cannot be found
or is not amenable to service of process.” 810 ILL. COMP. STAT.
5/3-309(a)(iii).
 As in Aﬃliated Health Group, the drawee here, Foremost’s
bank, disbursed the settlement funds to Paramount, discharg-
ing Foremost’s performance obligation on the claim. The
checks were not dishonored, lost, destroyed, or stolen; copies
of them are in the record. And we know that Paramount is
amenable to service because the parties deposed Paramount’s
owner. Thirteen thus may not recover from Foremost under
§ 3–309 or on a theory that the checks were dishonored under
§ 5/3–502.
 Similar to here, in Parkway Bank & Trust Co. v. State Farm
Fire & Casualty Co., 990 N.E.2d 1202, 1203 (Ill. App. Ct. 2013),
8 No. 22-2203

a co-payee sued an insurer for ﬁre loss proceeds. The insurer
responded it had already disbursed the settlement checks to a
third-party contractor who was also a co-payee. Id. at 1203,
1205. The insureds had authorized the contractor to receive
claim proceeds. Id. at 1204–05. Upon receiving the checks, the
contractor forged the plaintiﬀ’s endorsement, and the bank
disbursed the amount to the contractor. Id. at 1205.
 The Illinois appellate court held that once the check was
paid, the obligation was discharged to the amount of the
check. Id. at 1206 (citing 810 ILL. COMP. STAT. 5/3-310(b)(1)). It
did not matter that the contractor was a joint, rather than al-
ternative, co-payee not entitled to unilaterally enforce the
check. Id. The obligor’s performance was discharged, and the
co-payee’s remedy was to sue the payor bank for conversion
under 810 ILL. COMP. STAT. 5/3-420 or the drawer (insurer) un-
der 810 ILL. COMP. STAT. 5/3-309 for enforcement of a lost, de-
stroyed, or stolen instrument. Id. The co-payee plaintiﬀ could
not “merely ignore the instrument and sue the drawer on the
underlying contract.” Id. (quoting 810 ILL. COMP. STAT. ANN.
5/3-310, cmt. 4). We explained earlier that the requirements for
§ 5/3-309 are not met here, so Thirteen’s remedies are limited
to suing Paramount or the bank.
 Thirteen’s arguments to the contrary are all based on ei-
ther cheapest-cost-avoider policy or non-Illinois caselaw. Put-
ting to the side that we are not the ﬁnal arbiters of Illinois’s
commercial code or its policy preferences, it is open to debate
who here would be the cheapest cost avoider. At least where
the co-payee that cashed the check is an agent of an aggrieved
principal, the Restatement allocates the risk to the principal.4

 4 See RESTATEMENT (SECOND) OF AGENCY § 178 (1958) (“If an agent who

is authorized to receive a check payable to the principal as conditional
No. 22-2203 9

But policy debates give way to Illinois’s apparent statutory
preferences, revealed through its licensing and regulatory re-
gime for public adjusters. See generally 215 ILL. COMP. STAT.
5/art. XLV. Public adjusters must be bonded to provide recov-
ery “on behalf of any person to whom the public adjuster has
been found to be legally liable as the result of erroneous acts,
failure to act, fraudulent acts, or unfair practices in his or her
capacity as a public adjuster.” 215 ILL. COMP. STAT.
5/1560(a)(1)(B), (2)(B). They “may not agree to any loss settle-
ment without the insured’s knowledge and consent.” 215 ILL.
COMP. STAT. 5/1590(k). And failure to comply with statutorily
deﬁned standards can result in a civil penalty as well as con-
sequences for a public adjuster’s license. 215 ILL. COMP. STAT.
5/1555(a)(15). The Illinois Director of Insurance also has “the
authority to enforce the provisions of and impose any penalty
or remedy” for violations of Article XLV. § 5/1555(e).
 Requiring the insurer to bear the costs of a public
adjuster’s violation of statutory standards runs contrary to Il-
linois law, under which the public adjuster bears such conse-
quences, whether by tort or through remedies and penalties
under the licensing scheme. It would be odd if a wronged in-
sured could pursue the insurer—who had no participation in
the selection of the public adjuster/agent—for the agent’s al-
leged wrongs. It would be stranger still if an insurer would

payment forges the principal’s endorsement to such a check, the maker is
relieved of liability to the principal if the drawee bank pays the check and
charges the amount to the maker.”); see also RESTATEMENT (THIRD) OF
AGENCY § 7.08 cmt. (2006) (observing that U.C.C. § 3-405 (AM. L. INST. &
UNIF. L. COMM’N 2002) “allocates the risk of an employee’s fraudulent en-
dorsement to the employer”).
10 No. 22-2203

bear a drawee bank’s possible negligence in disbursing funds
without ascertaining proper endorsement by joint co-payees.
 Thirteen seeks to impose monitoring duties upon the in-
surer far beyond their insurance contract. Foremost agreed to
provide coverage and payment for negotiated claims. But it
did not agree to take responsibility for the actions of the pub-
lic adjuster Thirteen hired or to ensure the bank performed
proper diligence before paying a draft.
 Thirteen cites two non-Illinois cases to argue that a joint
co-payee’s unilateral cashing of a check does not discharge
the payor’s obligation. Both cases cut against Thirteen, how-
ever. In VFS Leasing Co. v. Markel American Insurance Co., No.
8:21-CV-1297-TPB-JSS, 2022 WL 3924277 (M.D. Fla. Aug. 31,
2022), the district court acknowledged that various UCC
states disagree on the issue. Id. at *3–4. And the VFS court spe-
ciﬁcally cited Parkway Bank & Trust, just discussed, as support
that Illinois’s version of the UCC discharges the payor’s obli-
gation in this circumstance. Id. at *3 n.6.
 VFS did not involve an insured’s co-payee agent, and the
district court in that case speciﬁcally limited its ruling to “the
cashing of a two-party check by one copayee who is not the
agent of the other copayee.” Id. at *3. The Texas Supreme
Court case that Thirteen cites did the same. McAllen Hosps.,
L.P. v. State Farm Cnty. Mut. Ins. Co. of Tex., 433 S.W.3d 535,
540 n.4 (Tex. 2014) (“We do not address this holding’s applica-
bility to copayees in an agency relationship, as that scenario
is not presented.”). Here, of course, Paramount was Thirteen’s
public adjuster and agent, responsible for claim negotiation
and authorized to receive the settlement checks. This fact dis-
tinguishes these cases. See Kenerson v. F.D.I.C., 44 F.3d 19, 23,
30–33 (1st Cir. 1995) (holding that the common law of agency
No. 22-2203 11

relieved a drawer-obligor of liability where the co-payee that
cashed the checks was “an agent of plaintiﬀ … authorized to
receive the checks on her behalf”).
 Accordingly, VFS Leasing and McAllen Hospitals—even if
they were entirely consistent with Illinois law—do not sup-
port Thirteen’s position. More to the point, guiding Illinois
cases Aﬃliated Health Group and Parkway Bank & Trust did not
turn on—and the text of 810 ILL. COMP. STAT. 5/3-414(c) does
not mention—whether the party that cashed the check was an
agent of the plaintiﬀ co-payee.
 C.
 Finally, Thirteen says Foremost agreed to make claim
payments to Thirteen in installments after Foremost had in-
spected repair work performed. As discussed earlier, Fore-
most’s delivery of the checks to Paramount constituted deliv-
ery to Thirteen, and when Paramount cashed the checks, that
discharged Foremost’s payment obligations under the policy.
To the extent that Thirteen alleges a breach of a diﬀerent
agreement—whether as part of the original policy or as a
modiﬁcation thereof—its factual basis is thin. Thirteen points
to its president’s deposition testimony that a Foremost ad-
juster told him “that any and all payments would be made in
draws after inspection was performed at the property to make
sure that the work was being done.” But such an agreement is
not in the policy.
 By its terms, the policy “is the entire agreement between
[Thirteen] and [Foremost] regarding the insurance coverages
expressed in it and supersedes all previous agreements re-
garding those coverages, either oral or written.” Other than
for governmental requirements mandating changes to the
12 No. 22-2203

policy or unilateral broadening of coverage by the insurer,
“[t]he only other way this policy can be changed is … in writ-
ing.” Neither a separate written agreement nor evidence of
consideration for the alleged agreement is in the record. So,
Thirteen cannot prevail on this theory.
 III.
 Bound by Illinois’s statutes and guided by its appellate
court decisions, we AFFIRM the district court’s judgment for
Foremost.